# EXHIBIT A



## LEHMAN, LEE & XU
雷曼律师事务所
**PRC Licensed Firm**

EXHIBIT "A"

000026

Español  中文

Search  | go |

About Us   Offices   Professionals   Practice Areas   News & Media   Resources   Careers

### Edward E. Lehman                                                    Managing Director

Professionals

Find a Professional

### Location: Beijing

Telephone  (86)(10) 8532 1919
Fax        (86)(10) 8532 1999

### Professional Summary

Edward Lehman is the Managing Director of Lehman, Lee & Xu in China where he specializes in the legal aspects of doing business in China. He advises foreign companies on joint ventures, wholly-owned subsidiaries and holding companies, technology licensing, engineering and construction projects. Edward is also particularly well-known for his work in relation to the protection of intellectual property rights in transactions and projects in China. In practice for over 20 years, Edward has advised on a wide variety of China projects ranging from cars to pharmaceuticals to power plants and websites.

### Areas of Practice

China Diplomatic Missions
Franchising
Media and Advertising
Trademark Registrations
Licensing
Trademark, Copyright and Unfair Competition Litigation
Banking and Finance
Corporate Governance
Commodities Trading
Capital Markets and Securities
Foreign Direct Investment
Mergers & Acquisitions

### Education and Professional Qualifications

- DePauw University BS 1982,
- University of Notre Dame College of Law,
- Concannon Program of International Law, London, England,
- International Law Certificate, (1985);
- Loyola University of Chicago, Juris Doctor (1986).
- Admitted to Illinois Supreme Court (1986);
- Admitted to U.S. District Court, Northern District of Illinois Trial Bar (1986);
- U.S. Court of Appeals, Seventh Circuit (1986);
- United States Court of International Trade (2006);
- United States Court of Appeals for the Armed Forces (2006);
- United States District Court for the Eastern District of Wisconsin (2006);
- United States Tax Court (2006);
- United States Supreme Court (2007).

### Experience

- Lord, Bissel & Brook, Attorney, 1985-1989
- Shanghai Law Office Foreign Company and Trade, Attorney, 1985-1992
- Lehman, Lee & Xu, Managing Director, 1992 - Present

### Awards

- Asialaw Leading Lawyer, Intellectual Property, 2008
- Asialaw Leading Lawer, Corporate Governance, 2008
- Asialaw Leading Lawer, Capital Markets/Corporate Finance, 2008

000027

- Asialaw Leading Lawer, Insurance/Reinsurance, 2008
- Asialaw Leading Lawer, Competition/Anti-Trust, 2008
- Asialaw Leading Lawer, Construction & Property, 2008
- Asialaw Leading Lawer, Labour & Employment, 2008
- Named Who's Who of Franchise Lawyers, 2008
- Asialaw Leading Lawyer, Intellectual Property, 2007
- Named Who's Who of Franchise Lawyers, 2006
- Recommended as an expert in IP practice in PLC Cross-border Corporate Intellectual Property Handbook, 2005
- Named Who's Who of International Trademark Lawyers, 2004
- Named Who's Who of Banking Lawyers, 2004
- Named as Asian Law & Practice's Best PRC Banking LawyerListed in the World's Leading Lawyers 2000-2004
- Listed in Top 500 Lawyers, Asia Pacific Legal

## Affiliations and Associations

- Legal advisor, Foreign Research-based Pharmaceutical Industry Association "FRPIA" (1996-present),
- Legal advisor, China International Franchisors Association "CIFA" (1996-present),
- Legal Advisor, China Chainstore and Franchise Association "CCFA" (1997-present);
- Vice Chair, American Bar Association "ABA", China Committee (2001-present);
- Member, New York State Bar Association;
- Member, Illinois State Bar Association;
- Member, American Bar Association;
- Member, Hong Kong Intellectual Property Society (2006-present);
- Member, National Association of Patent Practitioners;
- Member, Young Presidents Organization (2006-present);
- Member, Executive Committee of the Institute for Law & Technology at the Center for International & American Law; Alumni, World Bank Institute (2006).

## Languages

English (Native)
Chinese (Mandarin)

Copyright © 2001-2010 Lehman, Lee and Xu. All Rights Reserved

Privacy Policy | Terms of Use

# EXHIBIT B



# LEHMAN, LEE & XU
雷 曼 律 师 事 务 所   EXHIBIT "B"
**PRC Licensed Firm**

 Español   中文

Search   **go**

About Us   Offices   Professionals   Practice Areas   News & Media   Resources   Careers



## Offices

Offices

**China**
  Beijing
  Shanghai
  Shenzhen
  Guangzhou
  Hong Kong
  Macau
  Other China offices

**Mongolia**

**Chicago**

**New York**

### New York Office

#### Location
410 Park Avenue
15th Floor, PMB # 1205
New York, NY 10022
USA

#### Contacting the Office
Tel: (1)(212) 231-8431
Fax: (1)(212) 231-8121

Email: newyork@lehmanlaw.com

#### Learn More
View a list of professionals at this office

Copyright © 2001-2010 Lehman, Lee and Xu. All Rights Reserved

Privacy Policy | Terms of Use

# EXHIBIT C



**LEHMAN, LEE & XU**
雷 曼 律 师 事 务 所
PRC Licensed Firm

EXHIBIT "C"

000030
Español   中文

Search [go]

About Us   Offices   Professionals   Practice Areas   News & Media   Resources   Careers



## Our Clients

About Us

Our Firm

Our Clients

Reputation

Affiliations

Academic Partnerships

Contact Us

It is our aim to provide the highest quality of legal services to our clients. Our focus is on maintaining close relationships with our clients to ensure their objectives and expectations are met.

The following lists just some of the clients that we have been fortunate to work with over the years, many of whom we still work with today.

### Corporate

**Banking and Finance**

| | | |
|---|---|---|
| China Foreign Banks Association | Bank of Austria | Maybank S.A |
| WellsFargo | Mastercard | Visa |
| Citigroup | Barclays | UBS |
| Asia Development Bank | World Bank | Bank of East Asia |
| International Finance Corp. | URSA Bank | |
| Shanghai Pudong Development Bank | | ANZ Bank |

**Commodities Trading**

| | | |
|---|---|---|
| Chicago Futures Exchange | Louis Dreyfus | Goldman Sachs |

**Corporate Governance**

| | | |
|---|---|---|
| Universal Weather & Aviation | Stepan | Eli Lily |
| Aventis | Novartis | Shell |
| Petronas | Nokia | Motorola |
| Sun Microsystems | Oracle | Sony |
| Newscorp | Air France | KLM |
| United Airlines | Alitalia | International Paper |
| General Motors | ICBC | Bank of China |
| PDB | Lenovo Group | Haier |
| Qingdao Beer | Hi Sense | Sina- Sohu |
| Edexcel | PICC | Ping'an |
| Aventis | Novartis | Shell |
| Nokia | Microsoft | Oracle |
| Columbia Pictures Universal Studios | Sony | Newscorp |
| Air France | KLM | United Airlines |
| Bally | Barclays Bank | Barclays Capital |
| UBS | GE Money | May Bank |
| Financial Times | Pearson | Penguin |
| Certain Underwriters of Lloyds | China Life | RJ Reynolds |

**Capital Markets & Securities**

| | | |
|---|---|---|
| Zurich Insurance | Barclays Capital | CMC Markets |

**Foreign Direct Investment**

| | | |
|---|---|---|
| Mascoat | GV | GM |
| Delphi | Holland Neway | Stepan Chemical |
| Fiat Iveco | Allied Signal | Henkel |
| Corsair Yacht | Foton | |
| Holland Neway | Ford | General Motors |
| Delphi | Hyundai | TCL |
| Foton | | |
| Super 8 | Motel 6 | Shangrila |
| Intercontinental | Starwood | Holiday Inn |
| Hilton | | |

**Mergers and Acquisition**

| | | |
|---|---|---|
| Sanofi Aventis | Valeant | Novartis |
| Palm Source | OmniLife de Mexico | Bally |

## Dispute Resolution

000031

### Commercial Litigation
CMC Markets

### Pro-Bono Litigation
Families of victims of Baotou aircrash

## Intellectual Property

| | | |
|---|---|---|
| Andritz | Ballard | Powersystems |
| BASF | Carrier Corporation | Dow AgroSciences |
| Dow Chemical | Eastman Kodak | Freescale |
| Teva Pharmaceuticals | Gambro | General Electric |
| Underwriter Laboratories | United Technologies | Hitachi |
| MCR Financial Solutions | Lenovo | Leer Corporation |
| Roche Pharmaceuticals | Otis Elevators | Plantronics |
| Daiichi Pharmaceuticals | Fuji photo film | Siemens |
| Merck Sharp & Dohme | Nutrition Kitchen | Sony |
| Baxter Healthcare Company | Altana Pharma | Abbott |
| Senofi-Aventis Pharmaceuticals | ASTELLAS pharma | Baxter |
| Squibb Pharmaceuticals | Boehringer Ingelheim | Biogen |
| Ethypharm Pharmaceuticals | CSL Biotherapies | Sasol |
| Sankyo Pharmaceuticals | Cephalon | Fresenius |
| Genzyme Bio Pharmaceutical | GE Healthcare | Gruenthal |
| Beaufour-Ipsen Pharmaceutical | Lundbeck Pharmaceutical | GlaxoSmithKline |
| Pfizer Pharmaceuticals | Merck Pharmaceuticals | Novonorsk |
| Shering-Plough Pharmaceutical | AstraZeneca | Nippon Soga |
| Sumitomo Pharmacuetical | Solvay Pharmaceutical | Servier |
| Takeda Pharmaceutical | SmithKline & French | Newegg Inc |
| Janssen Pharmaceutical | Wyeth Pharmaceutical | Novartis |
| MundiPharma Pharmaceutical Company | | Grupo Bimbo |

China Association of Enterprises with Foreign Investment & RSD based Pharmaceutical Based Commitee

## Labor & Employment

| | | |
|---|---|---|
| Embassy of the United States | Air France | Weight Watchers |
| Embassy of Brazil | R.J. Reynolds | Delphi |
| Embassy of South Africa | Nokia | Motorola |
| Merck Pharmaceuticals | Altana Pharma | Astellas Pharma |
| Baxter Healthcare Company | Wyeth Pharmaceutical | AstraZeneca |
| Squibb Pharmaceuticals | Boehringer Ingelheim | Biogen |
| Lundbeck Pharmaceutical | CSL Biotherapies | Novonorsk |
| Sankyo Pharmaceuticals | Ethypharm Pharmaceuticals | Fresenius |
| Pfizer Pharmaceuticals | Genzyme Bio Pharmaceutical | Gruenthal |
| GlaxoSmithKline | Beaufour-Ipsen Pharmaceutical | Cephalon |
| Daiichi Pharmaceuticals | Roche Pharmaceuticals | GE Healthcare |
| Senofi-Aventis Pharmaceuticals | Shering-Plough Pharmaceutical | Novartis |
| Sumitomo Pharmacuetical | Solvay Pharmaceutical | Servier |
| Takeda Pharmaceutical | SmithKline & French | Baxter |
| Janssen Pharmaceutical | Eli Lily | ABC News |
| Red Cross | World Vision | Salvation Army |
| Heinrich Boll Foundation | Doctos without Borders | Care for Children |
| Save the Children | Project Hope | 700 Club |
| WWF | PeaceCorps | Instituto Cervantes |
| Danone | Estee Lauder | LV&H |
| Nestle | Cadbury Schweppe | RJ Reynolds |
| Reyolds America | TCL | Sony |
| WalMart | Carrefour | Home Depot |
| Shoshone | Kimberly Mine | Chevron |
| China Minmetals | | |
| MundiPharma Pharmaceutical Company | | Abbott |

China Association of Enterprises with Foreign Investment & RSD based Pharmaceutical Based Commitee

## Other Areas of Practice

### Aviation & Shipping

| | | |
|---|---|---|
| Universal Weather & Aviation | Air France | Air Italia |
| Air France-KLM | Bombardier | United Airlines |
| Cathay Pacific | Lufthansa | Qatar Airways |
| Ethiopian Airways | Alitalia | DHL |
| UPS | Maersk | FedEx |

**China Diplomatic Missions**

| | | |
|---|---|---|
| US | Brazil | South Africa |
| Liberia | Mongolia | Mauritius |
| Eritrea | Qatar | Jamaica |
| Philippines | Nigeria | Israel |
| UNDP | | |

000032

**Franchising**

| | | |
|---|---|---|
| Dunkin Donuts | Pizza Company | Yum! |
| Baskin Robbins | Applebees | Motel6 |
| Hardrock Cafe | Pizza Hut | Berlitz |
| Super8 Hotel | Subway | |
| China International Franchisers Assoc. | | Landrover |
| China Chainstore and Franchise Assoc. | | Corsair Yacht |

**Health and Pharmaceuticals**

| | |
|---|---|
| Foreign Research-based Pharmaceutical Industry Association | Valeant |

**Internet & E-Commerce**

| | | |
|---|---|---|
| Sun Microsystems | Motorola | Microsoft |
| Megabite Singapore | Bell South | Swedetel |
| China Mobile | Nokia | Cisco |
| Disney Internet | Alibaba | AOL |
| Microsoft | Motorola | Sony |
| Weight Watchers International Inc. | | |

**Media & Advertising**

| | | |
|---|---|---|
| Jack Daniel's | Star Alliance | General Electric |
| Australia Network | CETV | CBC |
| Asia Works TV | CCTV | CNBC |
| E Entertainment | Disney TV | CNN |
| ESPN Star Sports | Dow Jones | MTV |
| Turner Broadcasting | Star TV | Viacom |
| Motion Picture Association of America | IMG | Reed Elsevier |
| Forbes Fortune | Lexis Nexis | Nielsen |
| Creative Artists Agency (CAA) | Bertelsmann | Time |
| Warner Brothers | | |

**Sports and Entertainment**

| | | |
|---|---|---|
| Association of Tennis Professionals | Five-Star Basketball | Sports Beijing |
| Sudanese Olympic Committee | Qatar Olympic Committee | |
| Singapore Olympic Committee | Jamaica Olympic Committee | |
| Beijing Organizing Committee of the Olympic Games | | |
| US Olympic Committee | | |

Copyright © 2001-2010 Lehman, Lee and Xu. All Rights Reserved

# EXHIBIT D



# LEHMAN, LEE & XU
## 雷 曼 律 师 事 务 所
**A PRC LAW FIRM**

中文 | Deutsch | Espanol

**LEHMAN** -China knowledge  international perspective-

000022

Home                                                          Search

| Practice Areas | Professionals | Offices | About Us | Press Room | Resource Center | Careers |

EXHIBIT "D"

---

**Overview**

LEHMAN, LEE & XU is the third largest corporate commercial law firm in China, established in 1992 by a group of Chinese lawyers committed to developing excellence in the practice of law and to the founding of modern law practices in China.

Today, LEHMAN, LEE & XU has 31 branch affiliated offices throughout Greater China and the region with more than 250 lawyers, patent and trademark attorneys and legal assistants providing a full range of legal services to meet the diverse need of our clients worldwide.

**We are recognized as China's leading corporate & commercial law firm providing the best and most diversified legal services, representing many of the world's largest multi-nationals in a variety of transactions, as well as our local clients in the international corporate investment arena...**

*view more >*

**News Tag Clouds**

Amendments      **China**
Edward          **Law**      Lawyer
Lehman                       Licensing

---

**Awards / Acknowledgements**

LEHMAN, LEE & XU selected as China legal counsel, China lawyers and China law firm to the practice of the United States of America at Beijing and the   American diplomatic missions in Shanghai, Guangzhou and Chengdu, People's Republic of China. 2009

LEHMAN, LEE & XU selected as  China legal counsel, China lawyers and China law firm to the Embassy of the Republic of Israel and the  Israeli diplomatic mission in Shanghai, People's Republic of China. 2009

LEHMAN, LEE & XU selected as China legal counsel, China lawyers and China law firm to the Embassy of the Republic of South Africa, and the South African diplomatic mission to Shanghai, People's Republic of China. 2009

World IP Survey 2009 Ranks Lehman, Lee & Xu Patent Contentious Practice Ranked in Top Two Percent in China
MIP World IP survey 2009

World IP Survey 2009 Ranks Lehman, Lee & Xu Patent Prosecution Practice Ranked Among Top in China
MIP World IP Survey 2009

All

---

## 雷 曼 會 計 師 事 務 所

*China Blawg*

from/by **LEHMAN, LEE & XU**

### *Newsletter Subscription*

**Recent Publications**

Medical   Equipment,   Devices   & Healthcare
[Download]

Pharmaceuticals
[Download]

Transportation and Logistics
[Download]

Media Entertainment
[Download]

Industry Reports - Retail
[Download]

Industry Reports - Real Estate
[Download]

Agriculture
[Download]

**News**

Supplementary   Notice   Clarifies Treatment of Non-Residents Under Tax Treaties
[more]

How China Looks to Improve its Utilization of Foreign Investment
[more]

China's SAT Clarifies Taxation Rules for International Telecommunication

Management        Measures
Patent  Regulations States Tax
United   infringement  law
litigation  patent  potential  trademark

Services

000034    [more]

[ALL]



RSS Feeds    BOOKMARK

privacy policy | terms of use | sitemap | contact us | links | © Lehman, Lee & Xu All rights reserved

# EXHIBIT E

EXHIBIT "E"

From: "William R. Dunavant" <wrrrd@comcast.net>
Subject: FW: TAP WFOE China Payroll proposal
Date: July 13, 2010 8:18:29 PM MDT
To: "Philip J. Layfield, Attorney at Law" <philiplayfield@me.com>
▷  3 Attachments, 145 KB

From: Scott Garner [mailto:sgarner@lehmanlaw.com]
Sent: Monday, February 01, 2010 5:00 AM
To: wrrrd@comcast.net
Cc: Elehman@lehmanlaw.com; jjue@lehmanlaw.com; sgarner@lehmanlaw.com; jtang@lehmanlaw.com
Subject: TAP WFOE China Payroll proposal

Dear Mr. Dunavant,

Regarding your proposed project for offering credit cards and services in China. This is certainly a project that our attorneys can assist you with. We have one of China's largest and most experienced corporate/commercial practices in China and represent numerous large banks and securities brokers in Beijing and Shanghai. Located in Beijing, we have both proximity and a close working relationship with the Chinese banking regulators which greatly eases projects of this type.

Ed Lehman ask that I forward to you our standard retainer agreement with my proposed retainer amount. It has been my experience that projects of this type routinely require 500 hours to complete. I therefore propose a retainer amount of USD 150,000. If you find the terms of our engagement letter acceptable, please sign the engagement letter, scan a copy to me, and then forward the original to our offices in Beijing. As soon as our accounts department confirms receipt of the retainer amount, our attorneys will immediately begin work on this project.

Thank you for choosing Lehman, Lee & Xu as your legal services provider in China and we very much look forward to working with you.


Best regards,

Scott Garner, JD, CPA
Foreign Legal Counselor




**LEHMAN, LEE & XU**

Suite F, 16/F Mirae Asset Tower
166 Lujiazui Ring Road
Shanghai 200120 China
中国上海市浦东新区
陆家嘴环路166号
未来资产大厦,16层F单元

Tel: +86 (0)21 5877-9296
Fax: +86 (0)21 5877-9196

E-mail: sgarner@lehmanlaw.com
Web: www.lehmanlaw.com

THIS EMAIL AND ANY ATTACHMENT(S) ARE CONFIDENTIAL AND MAY BE PRIVILEGED OR OTHERWISE
PROTECTED FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT, KINDLY NOTIFY THE
SENDER BY REPLY EMAIL AND DISCARD ALL ITS CONTENTS FROM YOUR SYSTEM ACCORDINGLY
ANY OPINION, VIEW AND/OR OTHER INFORMATION IN THIS MESSAGE AND OR ANY ATTACHMENT(S),
HERETO WHICH DO NOT RELATE TO THE OFFICIAL BUSINESS OF LEHMAN, LEE & XU SHALL NOT BE
DEEMED GIVEN NOR ENDORSED BY THE FIRM. LEHMAN, LEE & XU ACCEPTS NO LIABILITY FOR ANY
ACTIVITY THAT MIGHT BE CONSIDERED TO BE AN ILLEGAL AND/OR IMPROPER USE OF EMAIL.

----- Original Message -----
From: Edward E. Lehman
To: wrrrd@comcast.net ; klehman@lehmanlaw.com ; jjue@lehmanlaw.com ; Scott Garner ; Jamie Tang 唐明君
Cc: Eva Li
Sent: Monday, February 01, 2010 7:58 AM
Subject: TAP WFOE China Payroll proposal

Roger, thanks for your quick response. We need to move this project forward as we do have a window of
opportunity to make this happen but to capitalize we have to have some of the moving parts in place. By
that Roger, I am in absolute agreement that TAP needs to establish a presence in China immediately.
Roger, you are right, our law firm will need to establish a WFOE for TAP in Beijing commencing this
week (we have waited long enough and it will not happen unless TAP is actually on the ground and
perceived . Scott Garner (a CPA and JD who also has an MBA from Thunderbird) will coordinate this
effort from a professional standpoint and will send you an engagement letter from our law firm under
separate cover today. We will need to have the engagement executed today so I will be able to move
forward with our client this week.
We need to set up a "chinese wall" where Scott will handle the professional side of TAP, while you
Roger and I explore the more entrepreneurial side of this operation.
Further Roger as you know, I have been in touch with certain Utah based MLM's operating in China
(that are our clients) they too would be interested in working with TAP for there payroll services but
TAP needs to be here to do it.
Scott will send you an engagement letter under separate cover this morning.
Kind regards,
-ed

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

---

**From:** "William R. Dunavant" <wrrrd@comcast.net>
**Date:** Sun, 31 Jan 2010 12:52:31 -0700
**To:** <elehman@lehmanlaw.com>; <klehman@lehmanlaw.com>
**Cc:** 'Eva Li'<eli@lehmanlaw.com>
**Subject:** RE: China Payroll proposal

ED; I think we should put a plan in place and get your team fully up to speed on the business before you do a presentation. Visa only provides the approval to use their card logo and the electronic pathway to collect payment or process payment. Please go to www.totalaccesspayments.com and look at Taps features we are offering:

Ed I think we should work together over Chinese New Year and get everyone spun properly because you are right; the Chinese will want it crystal clear.

Ed I agree with you and so do my partner that we take small steps is they process and not try to eat the Elephant. Last we need to get the prices that are being charged in China before we all establish a price list; this will take my team 2 weeks. Ed we will need to establish a company in China to be able to offer cards and services, I do not know how long this will take to do? I know you think we should get some companies signed up before approaching the bank and that is fine, we will need the bank second, then have the letter to go to Visa or Master Card and finally our company set up asap to issue and process cards and payment.

1. Set up companies that want the payments service with cards
2. Set up Tap China as a company to work in China
3. A Bank must set up an approval method for the card accounts
4. The bank will have the approval to issue accounts
5. Go to Visa or Master Card and have the approval to use their logos
6. The card company (tap) Total Access Payments Inc will process the cards and issue them.
7. Total Access Payments Inc will handle the processing and pay all the parties.
8. Total Access Payments Inc will partner with your accounting payment company to offer the card

service as a new function to checks or cash.

9. A payee will have a card and they can authorize their family to have cards, also so monies can be moved electronically anywhere in China or the world.

Regards
Roger

---

**From:** Edward E. Lehman [mailto:elehman@lehmanlaw.com]
**Sent:** Sunday, January 31, 2010 6:56 AM
**To:** wrrrd@comcast.net; klehman@lehmanlaw.com
**Cc:** Eva Li
**Subject:** Re: China Payroll proposal

Roger, what exactly is TAP,Inc.? Peoria, Arizona, where is that? What is that? What value is added by TAP? Seems this is just what Visa International (a client of our firm) provides. Am I missing something?
I will be asked all these questions and more when I meet with the Chinese. As to fees, TBA and negotiable is not going to work as a proposal. Chinese watch this stuff very closely. I need to understand everything if we are going to have an employer and a bank come on board. Sorry if this seems basic, but I have to be very remedial with the Chinese to make it crystal clear.
Thanks in advance.
-ed

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

---

**From:** "William R. Dunavant" <wrrrd@comcast.net>
**Date:** Sat, 30 Jan 2010 15:26:31 -0700
**To:** <elehman@lehmanlaw.com>
**Cc:** <eli@lehmanlaw.com>
**Subject:** China Payroll proposal

000039

Ed; please look at this proposal, you can add the companies name and if you want remove our name TAP and add your accounting firms name.  If you have any questions send me a SMS and I will get right back to you, also we can set up a go to meeting and show you everything in a PowerPoint at any time if you would like.

Regards
Roger


William R Dunavant
435.658.1312 Work
435.659.6018. Mobile
wrrrd@att.blackberry.net
2624 Eagle Cove Dr.
Park City, Utah 84060


Retainer Agr....pdf (133 KB)

# EXHIBIT F

 **State Bar of Georgia**

EXHIBIT "F"

 SEARCH

Lawyers Serving the Public and the Justice System

About the Bar | FAQs | Contact the Bar
Member Address Change | Terms of Use

Casemaker
Directories
Check CLE
Public Information
Handbook
Member Essentials
Programs
Ethics
Cornerstones of Freedom
Communications
Sections
Young Lawyers Division
Related Organizations
Bar Meetings
Parking Deck
Law-Related Education
Sponsorship/Marketing
Vendor Directory
Conference Center
Storefront

Home | Log on | Contact us | Cart

Member Directory

## Member Directory Search

**Mr. Scott Charles Garner**
**Company:** Lehman, Lee and Xu
**Address:** 10-2 Liangmaqiao Diplomatic Compound
No 22 Dongfang East Rd Chaoyang District
100600 BEIJING
CHINA
**Work Phone:**
**Fax:**
**Email:** sgarner@lehmanlaw.com
**Admit Date:** 6/27/2008
**Law School:** Georgia State University
**Status:** Active Member in Good Standing
**Public Disciplinary History:** None on Record

Click here for a list of status descriptions.

This site only includes information about an attorney's public disciplinary history from January 1995 through July 2010, with one exception - this site does show whether an attorney was disbarred at any time prior to July 2010. If an attorney has been suspended or disbarred and subsequently reinstated or readmitted, this site could show the membership status of the attorney as "in Good Standing."

Please check carefully to be sure that you have selected the correct attorney. Attorneys may have similar names.

If you find any inaccurate information, have any questions, or would like information about an attorney's public disciplinary history prior to January 1995 or after July 2010, please contact the Office of the General Counsel at 404-527-8720.

All grievances, investigations of grievances and private discipline are confidential. As such, the State Bar of Georgia is not able to confirm or deny that a grievance has been filed against an attorney, that an attorney is being investigated for an alleged violation of the Georgia Rules of Professional Conduct, or that an attorney has received private discipline.

Every effort has been made to keep the information contained on this website accurate and current, but it is provided with no warranty of any kind. Neither the State Bar of Georgia, nor its Officers, Executive Committee or Board of Governors, nor any employee thereof may be held responsible for the accuracy of the data.

If you have any questions about the attorney's membership status, please contact the Membership Department at 404-527-8777.

Copyright © 2005 - 2010 State Bar of Georgia | Legal | Site Map

# EXHIBIT G

000041

## BUSINESS OPERATIONS AGREEMENT

EXHIBIT "G"

This Business Operation Agreement ("Agreement"), dated _____ 2010, entered into by and on behalf of:

**TOTAL ACCESS PAYMENTS INC**, with its principal offices located at 20783 N. 83rd Avenue, Suite 103-244 Peoria, Arizona 85382 ("TAP"), and incorporated under the laws of Delaware, United States of America and **LEHMAN, LEE & XU HONG KONG LIMITED**, with its principal offices located at 10-2 Liangmaqiao Diplomatic Compound , No.22 Dongfang East Road Chaoyang District, Beijing 100600 China ("Lehman (HK)"), and incorporated under the laws of Hong Kong, and is intended to set forth the basic rights and obligations of the Parties regarding each Party's roles in the commercial cooperation to take place in Hong Kong.

**RECITALS:**

A.  TAP is a Peoria, Arizona based company that carries on business providing _____ ("General Services").

B.  TAP intends to incorporate a company in Hong Kong for its global operations. ("TAP (HK)").

C.  Lehman (HK) is able to provide corporate and management services in Hong Kong on behalf of TAP to TAP (HK)  in compliance with Hong Kong law.

**IT IS AGREED:**

**1.    DEFINITIONS**

1.1    In this Agreement, unless inconsistent with the context or otherwise specified, the following words shall have the following meanings:

**"Confidential Information"** means, in relation to a party, any information which is specified by that party as confidential, or which the other ought reasonably to regard as confidential. Confidential Information includes, but is not limited to customer lists and all information and material relating to the party's business in any way which comes into the possession, or knowledge of the other, but shall not include any such information or material which:

(a)    was in the receiving party's possession prior to receipt from the other party;

(b)    was received by a party in good faith from a third party not subject to a confidentiality obligation;

(c)   now is or later becomes publicly known through no breach of the confidentiality obligations of the receiving party;

(d)   was developed by the receiving party without the developing persons having had access to any of the Confidential Information of the other party; or

(e)   is authorised in writing by the party to whom the information relates to be released or is designated in writing by the party to whom the information relates as no longer being confidential or proprietary.

**"Hong Kong"** means Hong Kong Special Administrative Region;

**"Services"** means incorporation of TAP (HK) and any other services to be supplied to TAP (HK) by Lehman (HK) in accordance with Clause 20, in relation to this Agreement as stipulated in Clause 4;

**"Charges"** means the charges stipulated in Annexure A or any other Annexure.

**"Service Expenses"** means all expenses incurred by Lehman (HK), or on its behalf, for the purpose of providing Services to TAP;

**"Staff"** means in respect of either party any staff engaged by such party (including employees, agents and sub-contractors) in connection with this Agreement;

**"Taxes"** means all taxes, duties or charges levied or imposed by any government body (other than taxes imposed on either party's income) and includes, without limitation, value-added tax or similar broad based consumption tax or a tax on services;

**"TAP (HK) Operations"** means the operations relating to the provision of TAP's General Services to clients in Hong Kong.

2.   **INTERPRETATION**

2.1   Clause headings are for ease of reference only and are not intended to be part of or to affect the meaning, interpretation or construction of any of the terms and conditions of this Agreement.

2.2   A reference to any gender includes any other gender and the plural shall include the singular and bodies corporate shall include unincorporated bodies and (in each case) vice versa.

2

2.3   A reference to any statute, enactment, ordinance, order, regulation or other similar instrument includes a reference to the statute, enactment, ordinance, order, regulation or instrument as from time to time amended, extended, re-enacted or consolidated and all statutory instruments, orders, regulations or instruments made pursuant to it.

2.4   Unless the context otherwise requires those provisions contained in this Agreement which relate to any subject matter of which there are more than one shall apply severally to each.

2.5   Clauses, Sections, Pages, and the Annexures referenced by name shall refer to the Clause, Section, Page, or the Annexure having the title referred to.

2.6   The meaning of general words is not limited by specific examples introduced by "including", "for example" or "such as" or their derivatives.

2.7   If there is any conflict or inconsistency between the terms in the various parts of this Agreement, the terms and conditions of the Agreement (excluding the Exhibits) will prevail over those in the Exhibits.

**3.    TERM**

3.1   This Agreement is deemed to take effect from the date this Agreement is executed by the parties (the "Effective Date") and will continue in full force and effect until ____ months from the date of this Agreement or until TAP gives written notice to Lehman (HK) that TAP is able to fully independently operate its business in Hong Kong;

3.2   Nothing in Clause 3.1 shall be taken to prevent either party from terminating this Agreement in accordance with this Agreement or at law.

**4.    SERVICES AND RESPONSIBILITIES OF LEHMAN (HK)**

4.1   During the term of this Agreement, Lehman (HK) shall provide all incorporation, management, administrative and business services that are necessary and appropriate for the day-to-day administration of the TAP (HK) Operations, including, without limitation, the provision of:

(a)   Incorporation of TAP (HK);

(b)   Support Services;

3

000044

(c)   Public relations and marketing;

(d)   Management;

(e)   Administration;

(f)   Financial record keeping;

(g)   Other business services;

(h)   Business expansion;

(i)   IT, technology and data services;

(j)   Billing and revenue collection

5/6/10 4:40 PM
Deleted:

4.2   Lehman (HK) must commence the provision of the Services upon receiving the initial payment of US$ 2.2 million (2,200,000) ("Initial Payment") after the Effective Date. US$ One hundred and fifty thousand (150,000,000) of the Initial Payment shall be retainer for the Services to be provided by Lehman (HK), and the remaining amount of the Initial Payment shall be used for payment of Services to be provided by Lehman (HK).

4.3   Lehman (HK) must follow such directions in relation to the Services as TAP may notify to Lehman (HK) from time to time.

4.4   Lehman (HK) must ensure that all members of its Staff comply with all reasonable security and other office procedures and regulations implemented by TAP, at any of their premises at which Services are required to be carried out, which are notified to Lehman (HK) from time to time.

5.   **TAP'S CONSENTS**

TAP agrees to (i) give Lehman (HK) all information necessary for Lehman (HK) to perform and complete the Services under this Agreement, (ii) cooperate fully with Lehman (HK) in the performance and completion of the services, and (iii) pay to Lehman (HK) the fee shown in Clause 4.2, Clause 6 and Annexures below and any Taxes in accordance with Clause 7 below.

4

000045

**6.    CHARGES AND PAYMENT**

6.1    Lehman (HK) may invoice TAP for Services on monthly basis as set out in Annexure A.

6.2    TAP must pay Lehman (HK) the Charges within 14 days of the date of each invoice. Payment is to be made in US dollars.

6.3    TAP shall reimburse Lehman (HK) for all Services Expenses within 48 hours of written request by Lehman (HK).

6.4    At the written request of TAP, Lehman (HK) shall provide documentary evidence for any Service Expenses that it claims to have incurred.

6.5    All Charges, Services Expenses and other payments to Lehman (HK) shall be paid to the following accounts:

| | |
|---|---|
| *Account holder*: | LEHMAN, LEE & XU |
| *Account number*: | 511-748147-274 |
| *Bank*: | HSBC, Head Office, 1 Queen's Road, Central, Hong Kong |
| *Swift Code*: | HSBC HKHHHKH |

6.6    All amounts set out in Annexure A and all payments in connection with this Agreement are exclusive of any and all Taxes relating to this Agreement.

**7.    TAXES**

7.1    TAP agrees to immediately pay any present or future Tax which arises from the TAP (HK) Operations or from any payment made by Lehman (HK)   or its agents under this Agreement.

7.2    TAP shall indemnify Lehman (HK) for the full amount of Taxes paid by Lehman (HK) and any liability (including penalties, interest and expenses) arising from or with respect to such Taxes, whether or not they were correctly or legally asserted, excluding taxes imposed on the Lehman (HK)'s net income, capital taxes or receipts and franchise taxes. Payment under this indemnification shall be made within 30 days from the date that Lehman (HK) makes written demand for it. A certificate as to the amount of such Taxes submitted to TAP by Lehman (HK) shall be conclusive evidence, absent manifest error, of the amount due from TAP to Lehman (HK).

5

7.3   TAP shall furnish to Lehman (HK) the original or a certified copy of a receipt evidencing payment of Taxes made by TAP within 30 days after the date of any payment of Taxes.

7.4   The provisions of this Clause 7 shall survive the termination of the Agreement.

## 8.   BILLING AND COLLECTION

8.1   On behalf of and for the account of TAP (HK), Lehman (HK) shall establish and maintain credit and billing and collection policies and procedures, and shall use its best efforts to bill and collect timely all amounts owed by third parties arising out of the TAP (HK) Operations.

8.2   Nothing in this Agreement shall be construed as a guarantee by Lehman (HK) that amounts billed will be collected.

8.3   Lehman (HK) covenants to transfer and deliver to TAP all Profit received by Lehman (HK) from any third parties in relation to the TAP (HK) Operations, within 48 hours of receipt, if any.

## 9.   WARRANTIES AND UNDERTAKINGS

9.1   Lehman (HK) represents and warrants that:

(a)   it is properly incorporated or taken to be incorporated or registered and validly existing under the laws of Hong Kong;

(b)   it has taken all necessary action to authorise the signing, delivery and performance of this Agreement;

(c)   it has power to enter into and perform its obligations under this Agreement and can do so without the consent of any other person;

(d)   it has obtained and will keep current all consents, registrations, filings, licences and approvals necessary to perform the Services and carry on its business;

(e)   the Services will be rendered with due care and skill;

6

000047

9.2   TAP represents and warrants the authenticity and validity of all information given to Lehman (HK) and to bear all the legal risk of the in-authenticity and invalidity of the information.

9.3   TAP shall warrant legitimacy of TAP (HK) Operations, and shall bear any legal obligations and liabilities related to TAP (HK) Operations.

## 10.   INDEMNITY

10.1  TAP shall indemnify Lehman (HK), its shareholders, directors, officers, employees and agents against any costs, expenses, damages or other liabilities, including reasonable attorneys' fees arising out of or relating to the TAP (HK) Operations.

10.2  Notwithstanding clause 10.1, TAP is not obliged to indemnify Lehman (HK) against costs, expenses, damages or other liabilities arising out of the TAP (HK) Operation where such liabilities directly results from the gross negligence of Lehman (HK).

## 11.   LIMITATION OF LIABILITY

11.1  Nothing in this Agreement excludes or limits the liability of either party in respect of:

(a)   death, personal injury or damage to physical property caused by its negligence (including negligence by its Staff);

(b)   any indemnity given in this Agreement;

(c)   dishonesty, or the tort of deceit, or wilful neglect by its employees, agents or contractors;

(d)   fraudulent misrepresentation; and

(e)   liability which may not otherwise be limited or excluded under applicable law.

## 12.   TERMINATION

12.1  Either party ("the first party") may terminate this Agreement with immediate effect by written notice to the other if:

(a)   The other party commits any breach of this Agreement, being a breach incapable of remedy;

7

(b)   The other party commits any breach of this Agreement which is capable of remedy and fails to remedy the same within fifteen (15) days of receiving notice from the first party identifying such breach and requiring it to remedy the same;

(c)   The other party shall become insolvent, shall enter into liquidation (whether voluntary or compulsory) or shall have a receiver appointed in respect of the whole or any part of its assets or undertaking (save in connection with a bona fide amalgamation or restructuring approved by the first party, such approval not to be unreasonably withheld); or

(d)   The other party ceases business or stops or suspends or threatens to stop or suspend payment of all or a material part of its debts or is unable to pay its debts;

12.2   TAP may terminate this Agreement at any time for its convenience by giving at least 30 days prior written notice to Lehman (HK).

## 13.   EFFECT OF TERMINATION

13.1   Termination of this Agreement shall be without prejudice to any rights of either party which may have accrued up to the date of such termination and the rights to terminate this Agreement are not intended to be exclusive but shall be in addition to every other remedy or right including the right to recover damages and to a decree requiring any appropriate performance required by this Agreement.

13.2   Clauses 1, 2, 7, 10, 11, 12, 13 and Clauses 14 to 25 inclusive shall survive any termination or expiry of this Agreement and continue indefinitely.

13.3   In the event that this Agreement is terminated, Lehman (HK) undertakes that within 10 Business Days of receipt of a written request from TAP and at the option of TAP (HK) to:

(a)   return all property in its possession or under its control that belongs to TAP;

(b)   return all Confidential Information of TAP in its possession together with all copies thereof; and

(c)   destroy all Confidential Information of TAP in its possession not returned to TAP at the direction of TAP by shredding or incineration of all such documents and other materials in its possession, custody or control and certifying to TAP that this has been done.

8

000049

**14.   CONFIDENTIALITY**

14.1   Neither party may in any circumstances give access to or disclose the other party's Confidential Information to any person, without obtaining that party's prior written consent.

14.2   Notwithstanding Clause 12.1, Lehman (HK) may disclose Confidential Information to its Staff provided that such access is reasonably required by Lehman (HK) to perform its obligations under this Agreement and those Staff agrees to keep that information confidential on terms no less stringent than those contained in this Agreement. Lehman (HK) will remain liable for any disclosure of Confidential Information by such Staff as if it was a disclosure by Lehman (HK).

14.3   Neither party may make any public announcements regarding this Agreement, without the prior written consent of the other, such consent not to be unreasonably withheld.

**15.   COMPETITION AND SOLICITATION**

15.1   Subject to Clause 15.5, Lehman (HK) or any of its affiliates undertakes to TAP that it will not, without the prior written approval of TAP, at any time whilst this Agreement remains in force or following termination hereof (for whatever reason) whether directly or indirectly or alone or in conjunction with or on behalf of any other person(s):

(a)   solicit the services of any person who or which was, at any time prior to termination of this Agreement, an employee of, consultant to, or otherwise party to any contract with, the TAP Companies, in breach of any contract or agreement with the TAP Companies; or

(b)   contact any supplier, customer or client of the TAP Companies with a view to adversely affecting any business relationship between the TAP Companies and any such supplier, customer or client.

15.2   For the purpose of this Clause 15, a similar or competitive business is a business that provides General Services or any other business which the TAP Companies may carry on at any time whilst this Agreement is in force.

15.3   Lehman (HK) acknowledges to TAP that the restrictions set out in Clause 13.1 are considered by it to be reasonable to protect the interests of TAP, but if the same shall be found to be void or voidable but would be valid and effective if some part thereof were deleted, such restrictions shall apply with such modification(s), whether as to duration,

9

business or geographical scope or otherwise, as may be necessary to make them valid and effective.

15.4 Nothing in Clause 15 shall be taken to prevent Lehman, Lee and Xu law firm from providing legal services to clients whom operate a business providing General Services, or that in any way competes with TAP.

## 16.   WITHHOLDING TAX

16.1 In the event that any payment to be made in respect of any invoice is subject by law to any withholding tax, the payer must make payment to the payee of the amount owing, less a deduction for such withholding tax and must account to the relevant tax authority for the appropriate withholding tax.

16.2 Payment of such net sum to the payee and to the relevant tax authority of the said withholding tax shall, for the purposes of this Agreement, constitute full settlement of the sums owing under the relevant invoice.

16.3 The payer hereby agrees that it will, upon written request from the payee and at the payee's expense, furnish any necessary evidence that may reasonably be required of the payment of the said withholding tax.

16.4 The payee hereby undertakes that it will, upon written request from the payer, arrange to furnish declaration of tax residence on the prescribed forms and obtain certification by the relevant taxation authority in order to confirm the applicability and availability of any reduced rate of withholding tax under the provisions of the relevant double taxation treaty, if applicable.

## 17.   FORCE MAJEURE

17.1 Neither party to this Agreement (hereinafter in this Clause 17 referred to as the "affected party") shall be deemed to be in breach of this Agreement or otherwise liable to the other as a result of any delay or failure in the performance of its obligations hereunder if and to the extent that such delay or failure is caused by any force majeure and the time for performance of the relevant obligation(s) shall be extended accordingly. For the purposes of this clause, "force majeure" shall mean any objective circumstances which are unforeseeable, unavoidable and insurmountable, including, without limitation, any flood, earthquake, storm, typhoon, subsidence, epidemic or other natural disaster or calamity, any war or threat thereof, terrorist action, riot, invasion, civil disorder, insurrection, any action or failure to act

10

on the part of any governmental authority in any jurisdiction, any trade embargo, industrial action, strike or lockout.

17.2    Either party shall be liable to the other if force majeure occurs after any delay by such party in the performance of its obligations hereunder.

17.3    The affected party shall forthwith notify the other party of the nature, extent and possible duration of the event or circumstances constituting the force majeure and shall provide evidence of such force majeure within a reasonable period of time, use all reasonable endeavours to reduce the effect of such event or circumstances on the performance of its obligations hereunder and, forthwith after cessation of such event or circumstances, notify the other party thereof and resume full performance of its obligations under this Agreement.

17.4    If any event or circumstances constituting the force majeure delays the performance by the affected party of its obligations hereunder for a continuous period of not less than six (6) months, the other party hereto shall be entitled to give notice to the affected party to terminate this Agreement. Any such notice, which shall be irrevocable, shall specify the date on which such termination is to have effect, not being less than fourteen (14) days after the date on which such notice is deemed to be given. The provisions of this Agreement as to the consequences of termination shall apply to any termination pursuant to this Clause 16.4.

## 18.    RELATIONSHIP

18.1    Nothing in this Agreement creates a joint venture, relationship of partnership or agency, except as provided in this Agreement, between the parties. Accordingly, except as expressly authorised under this Agreement neither party has authority to pledge the credit of or make any representation or give any authority to contract on behalf of another party.

18.2    No Lehman (HK) staff shall be construed as being an employee of TAP by virtue only of this Agreement or the performance of Lehman (HK)'s obligations under this Agreement.

## 19.    WAIVERS

19.1    No forbearance, delay or indulgence by either party in enforcing the provisions of this Agreement shall prejudice or restrict the rights of that party nor shall any waiver of its rights in relation to a breach of this Agreement operate as a waiver of any subsequent breach.

11

000052

**20.  ASSIGNMENT AND DELEGATION**

20.1   Subject to clause 20.2, neither party may assign or delegate any of its rights or obligations under this Agreement to any other third party without first obtaining the express written consent of the other party (such consent not to be unreasonably withheld or delayed).

20.2   Lehman (HK) may delegate its performance and obligations to its affiliates.

**21.  SEVERABILITY**

21.1   Notwithstanding that the whole or any part of any provision of this Agreement may prove to be illegal or unenforceable the other provisions of this Agreement and the remainder of the provision in question shall remain in full force and effect.

**22.  VARIATIONS**

22.1   Any terms of Lehman (HK) or any third party purporting to vary this Agreement shall be of no effect unless the provisions of this clause 21 have been followed.

22.2   This Agreement may only be changed or added to by a written variation referencing this Clause 21, agreed and signed by both parties' Legal Representatives.

**23.  NOTICES**

23.1   Any notice required or authorised to be given under, or in connection with, this Agreement by either party to the other shall be in writing.

23.2   Any such notice shall be sent to the recipient at the address set out in Clause 22.4, or as otherwise directed by the recipient pursuant to Clause 22.5. Notices may be delivered by hand or sent by registered post, courier or by facsimile.

23.3   If delivered by hand or sent by courier and if the parties to the Contract are located in the same city, notice will be deemed to have been given on the date of delivery at the recipient's address. If sent from one city in China to another city in China, notice will be deemed to have been given 1 days after delivery.  If sent by facsimile, notice will be deemed to have been given on the date of despatch, subject to confirmation of uninterrupted transmission by a transmission report provided that any notice sent by facsimile after 5:30 p.m. (local time at the recipient's address) on any business day or at any time on a Saturday, Sunday or public holiday (in the jurisdiction where the recipient has its address) shall be deemed to have been

12

000053

given at 9:00 a.m. on the next following business day. If sent by registered post, notice will be deemed to have been given 5 business days after posting if sent from one city in China to another city in China or 15 business days after posting if sent from overseas to an address within China or vice versa.

23.4   The parties' addresses and other details for the purposes of this Clause 23 are, subject to Clause 22.5, as follows:

TAP (full name)

Address: 2624 Eagle Cove Dr. Park City, Utah 84060

Fax Number:

For the attention of William R. Dunavant

Lehman (HK)

Address of its Beijing affiliates: 10-2 Liangmaqiao Diplomatic Compound No.22 Dongfang East Road Chaoyang District Beijing 100600 China

Fax Number: (8010) 8532-1999

For the attention of: Edward Lehman

23.5   Either party hereto may notify the other of any change of its address, facsimile number or the person for whose attention any notice should be marked, provided that such notification shall not have effect earlier than two (2) business days after the date on which it is deemed given pursuant to this Clause 23.

## 24.   ENTIRE AGREEMENT

24.1   This Agreement constitutes the entire agreement and understanding between the parties relating to the subject matter. Except as may be expressly stated in this Agreement, it supersedes and cancels all prior agreements, statements, representations, understandings, negotiations and discussions, whether oral or written, between the parties.

24.2   Each of the parties acknowledges and agrees that in entering into this Agreement it does not rely on any statement, representation, warranty or understanding made prior to this Agreement save to the extent that such statement, representation, warranty or understanding is incorporated into this Agreement.

13

000054

## 25.   DISPUTE RESOLUTION

25.1   This Agreement shall be governed by, and construed in all respects in accordance with, the laws of the State of Delaware, U.S.

25.2   Any dispute, controversy or claim arising out of or relating to this Agreement, or the interpretation, breach, termination or validity hereof, shall be resolved through friendly consultation, which shall begin immediately after one party has delivered to the other party written request for such consultation.

25.3   If within thirty (30) days following the date on which such notice is given the dispute cannot be resolved, the parties may submit the dispute to courts of the State of Delaware, U.S.  The courts of the State of Delaware, U.S. shall have exclusive jurisdiction to hear and decide any claims arising from this agreement.

25.4   The prevailing party shall be entitled to all reasonable expenses (including, without limitation, reasonable attorney's fees).

## 26.   COUNTERPARTS

26.1   This Agreement may be executed in counterparts, all of which shall constitute one agreement between the parties.

IN WITNESS THEREOF, the parties have executed this Agreement with effect as of the date set forth above.

Signed for and on behalf of TAP:

Signature:              -------------------------------------
                        (authorised signature)

Name (Block Letters):   -------------------------------------

Position:               -------------------------------------

Date:                   -------------------------------------

14

000055

Signed for and on behalf of Lehman (HK):

Signature: _____
(authorised signature)

Name (Block Letters): _____

Position: _____

Date: _____

15

# EXHIBIT H

EXHIBIT "H"

From: "William R. Dunavant" <wrrrd@comcast.net>
Subject: FW: Help - Company Set up in Hong Kong
Date: July 13, 2010 8:14:06 PM MDT
To: "'Philip J. Layfield, Attorney at Law'" <philiplayfield@me.com>

From: Edward E. Lehman [mailto:elehman@lehmanlaw.com]
Sent: Monday, May 03, 2010 8:52 PM
To: William R. Dunavant; Eddie Hon 韩海光; Scott Garner; jjue@lehmanlaw.com
Subject: Re: Help - Company Set up in Hong Kong

Fyi we represent Euroclear in China.
I will get back to you.
-ed

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

From: "William R. Dunavant" <wrrrd@comcast.net>
Date: Mon, 3 May 2010 20:10:14 -0600
To: <elehman@lehmanlaw.com>; 'Eddie Hon 韩海光'<ehon@lehmanlaw.com>; 'Scott
Garner'<sgarner@lehmanlaw.com>; <jjue@lehmanlaw.com>
Subject: RE: Help - Company Set up in Hong Kong

Ed; these are BG/SBLC's that banks fund from, this is just like buying a SBLC from Euro Clear, a
company gives it to a bank in HK and the bank adds it to their balance sheet and pays 2-3% interest a
week to the owner which is us.. This is done all the time and people like us use it to finance their
companies.

RD

000057

**From:** Edward E. Lehman [mailto:elehman@lehmanlaw.com]
**Sent:** Monday, May 03, 2010 7:30 PM
**To:** William R. Dunavant; Eddie Hon 韩海光; Scott Garner; jjue@lehmanlaw.com
**Subject:** Re: Help - Company Set up in Hong Kong

Dear Roger,
We did the same thing last week with a European Bank and a 100 million dollar facility (they syndicated the facility), to a state owned enterprise which would be purchasing product for that amount over the next three months. The difference is that the bank opened the account in HKG. Our experience is that the SBLC and guarantees come with strings attached, is that not the case here? Please advise. Roger, these matters are a bit like the act of swimming, you need to get in the water to do it. The company needs to be set up and the plan outlined clearly and then it can be done.
-ed

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

---

**From:** "William R. Dunavant" <wrrrd@comcast.net>
**Date:** Mon, 3 May 2010 19:14:22 -0600
**To:** 'Elehman@lehmanlaw.com'<elehman@lehmanlaw.com>
**Subject:** FW: Help - Company Set up in Hong Kong

Ed, everyone is very happy and Brett has one last question, we are asking Citi in HK if they will accept our 200 million Euro SBLC from RBS London as we speak, Could I ask you to answer Brett's question?

-----Original Message-----
From: Brett Radford [mailto:bradford@totalaccesspayments.com]
Sent: Monday, May 03, 2010 6:59 PM
To: 'William R. Dunavant'
Subject: RE: Help - Company Set up in Hong Kong

Roger,

This is good news from Ed and appreciate his help and advice. Could you ask
him that the bank account can accept Investment monies from SBLC's and or
bank Guarantees. I was informed that a normal "trading" or "deposit" account
from the Bank will not accept the Instruments' that we are proposing. Just
want to make sure we have 200 million Euro instrument and we cannot get it
to the bank.

He may advise that we need a Investment Account or something like that.


Brett Radford
Chief Executive Officer
TOTAL ACCESS PAYMENTS INC
www.totalaccesspayments.com
Cell Phone:      1-623-521-1284


-----Original Message-----
From: William R. Dunavant [mailto:wrrrd@comcast.net]
Sent: Monday, May 03, 2010 5:10 PM
To: Brett Radford ; Thomas J. Hess
Cc: Timothy A. Nemeckay; Kevin Christian
Subject: FW: Help - Company Set up in Hong Kong


-----Original Message-----
From: Edward E. Lehman [mailto:elehman@lehmanlaw.com]
Sent: Monday, May 03, 2010 5:39 PM
To: William R. Dunavant; Miriam Lau
Cc: Scott Garner
Subject: Re: Help - Company Set up in Hong Kong

Dear Roger,
Thanks for the message. If you wish to get this done in trust, and done this
week, we can do it but we will need the money up front, and I will

set it up
myself. What has never been discussed it the "know your client"
anti-FCPA
element anti-money laundering guidelines to establish these
organizations.
We will need money to maintain the corporation for 24 months to go
forward,
we will set up the bank account so that you can operate the bank
account via
the internet if needed. Scott and our CPA team will work as your
alter-ego.
I need to know the name you will use to get it approved by the
government
soonest.
As to your questions:
1. What is a Private Limited Company is it the same as what we call
in the
USA a SEC Registered Corporation and any operating restrictions.
ANSWER: it is same as a closely held limited liability company
incorporated
in a State in the USA. No operating restrictions except if you wish
to be a
bank, a trust, and insurance business, or a professional services
organization. Each of those entities needs additional approval. The
scope of
the business will be whatever you require and can be anything that
is not
considered illegal.


2. What documents are required to form the company and any
restrictions?
ANSWER: No documents required by you, I will do it all in trust and
can
transfer to you at any time.

3. Individual or Corporate Body can be the owners, can we use TAP
Delaware?
ANSWER:Yes, but for speed, I will be the incorporated and later can
transfer
to the Delaware corporation. Delaware corporation will be the
beneficial
owner.

4. Share capital of $10,000 HK paid up?
ANSWER: Can be no par value or any value you wish to assign, but

that
suggestion is fine.


5. Assistance in opening HSBC account, what documents are required and what
is the minimum opening balance amount?
We would do it all this week and the bank would prefer several thousand US
dollars.

ANSWER: Again, we are the ones "on the hook" and all will be opened and
maintained by us. We will require USD 25K down to proceed. We do not wish to
run after payments or nickel-and-dime this thing. Our reputation is on the
line personally and professionally. You can get this done by scores of
people so you do have alternatives with us, you will get seamless service
and personalized speed discretion and care.
If you wish to proceed let us know. Scott will send you the wire transfer
information under separate cover.
Regards,
-ed


Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

# EXHIBIT I

EXHIBIT "I"

From: "William R. Dunavant" <wrrrd@comcast.net>
Subject: **FW: TAP Confirmation - draft of Business Operation Agreement**
Date: July 13, 2010 8:15:05 PM MDT
To: "Philip J. Layfield, Attorney at Law'" <philiplayfield@me.com>
▷    11 Attachments, 4.3 MB

From: William R. Dunavant [mailto:wrrrd@comcast.net]
Sent: Sunday, May 09, 2010 5:03 PM
To: 'elehman@lehmanlaw.com'
Subject: TAP Confirmation - draft of Business Operation Agreement

Ed, I must layout the project so you can make some adjustments to our first contract:

1. There will be 3 investors behind TAGC to set up the company. The investors will deposit into the Lehman Escrow account $2.8-$2.9 million US dollars.
2. I will need an escrow agreement for the 3 investors asap.
3. The money will transfer in 24 hour to Lehman Law escrow.
4. Upon Lehman receiving the escrow money 3.5 % of the funds will be keep by Lehman as soft costs..Approx ($90-100K us dollars).
5. The remainder of the funds will be transfer by Lehman to the HSBC account.
6. The Name of the Company that will be set up in HK is TAGC and owned by Brett Redford, Tim Nemeckay, Kevin Christian and William Roger Dunavant.
7. The project will be the Total Access Payment Inc Project.
8. I am sending by e-mail all the Business Plan and financials along with corporate paperwork with Corporate Resolution.
9. Upon the funding of the SBLC/BG Tap will issue $150,000.00 for a retainer for TAP with Lehman Law.
10. TAGC will keep in the HSBC account approx $ 5 million US a month for 24 months.
11. TAP will start a second account and will keep Approx $ 5m US in that account per month, also as working capital for 24 months. As the business grows so will this account.
12. Staff is listed in Business Plan, but just working with Lehman in China could be 50-200?
13. The salaries are in the business Plan. We have not broke out China as a Major piece yet because of the funding.. What would you think we would need?

Regards
Roger

From: Edward E. Lehman [mailto:elehman@lehmanlaw.com]
Sent: Sunday, May 09, 2010 7:23 AM
To: William R. Dunavant
Subject: Re: TAP Confirmation - draft of Business Operation Agreement

Dear Roger,
Will that be on Tuesday my time or your time. I am in touch with Crystal Jiang at HSBC. I need an outline of the whole deal to present to the bank as to operations. I understand China issues but do not have a clue about activities elsewhere. What is the expected turnover to the account in the first 12 months? Who are the beneficial owners? The DE company? How many staff? Expected salaries? All this happens in the bank interview.
Kind regards,
-ed

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

---

**From:** "William R. Dunavant" <wrrrd@comcast.net>
**Date:** Thu, 6 May 2010 20:07:25 -0600
**To:** <elehman@lehmanlaw.com>
**Subject:** FW: TAP Confirmation - draft of Business Operation Agreement

---

**From:** William R. Dunavant [mailto:wrrrd@comcast.net]
**Sent:** Thursday, May 06, 2010 8:07 PM
**To:** 'fhchen@lehmanlaw.com'
**Subject:** RE: TAP Confirmation - draft of Business Operation Agreement

Dear Fleur; Please send the draft of Business Operation Agreement to this e-mail address, I am not receiving an attachment a copy on my blackberry.

Regards
Roger

---

**From:** wrrrd@att.blackberry.net [mailto:wrrrd@att.blackberry.net]
**Sent:** Thursday, May 06, 2010 5:50 PM

000063

**To:** William R. Dunavant
**Subject:** Fw: TAP Confirmation - draft of Business Operation Agreement


Sent via BlackBerry by AT&T

---

**From:** "Edward E. Lehman" <elehman@lehmanlaw.com>
**Date:** Thu, 6 May 2010 23:49:13 +0000
**To:** Fleur Chen é™`å®èŠ³<fhchen@lehmanlaw.com>; <wrrrd@att.blackberry.net>
**Cc:** Scott Garner<sgarner@lehmanlaw.com>; Eddie Hon éŸ©æµ·å...‰<ehon@lehmanlaw.com>
**Subject:** Re: TAP Confirmation - draft of Business Operation Agreement


Resend
-eel

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

---

**From:** "Fleur Chen" <fhchen@lehmanlaw.com>
**Date:** Thu, 6 May 2010 18:22:16 +0800
**To:** <wrrrd@att.blackberry.net>
**Cc:** <elehman@lehmanlaw.com>; <sgarner@lehmanlaw.com>; <ehon@lehmanlaw.com>
**Subject:** TAP Confirmation - draft of Business Operation Agreement

Dear Mr. Dunavant,

Thank you for your message to Mr. Lehman dated May 4, 2010.

Regarding the project noted in your email, instructed by firm, here send you the draft of the Business Operations Agreement. Please find in the attachment.

Should you have any question, please do not hesitate to let us know. Thank you.

Best regards,

Fleur CHEN

Attorney



A LICENSED CHINESE LAW FIRM

**LEHMAN, LEE & XU**
**10-2 Liangmaqiao Diplomatic Compound**
**No.22 Dongfang East Road Chaoyang District**
**Beijing 100600 China**
**Tel: (86)(10) 8532-1919**
**Fax: (86)(10) 8532-1999**
**E-mail: fhchen@lehmanlaw.com**
**www.lehmanlaw.com**

 Skype me!™

THIS EMAIL AND ANY ATTACHMENT(S) ARE CONFIDENTIAL AND MAY BE PRIVILEGED OR OTHERWISE
PROTECTED FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT, KINDLY NOTIFY THE
SENDER BY REPLY EMAIL AND DISCARD ALL ITS CONTENTS FROM YOUR SYSTEM ACCORDINGLY.
ANY OPINION, VIEW AND/OR OTHER INFORMATION IN THIS MESSAGE AND OR ANY ATTACHMENT(S)
HERETO WHICH DO NOT RELATE TO THE OFFICIAL BUSINESS OF LEHMAN, LEE & XU SHALL NOT BE
DEEMED GIVEN NOR ENDORSED BY THE FIRM. LEHMAN, LEE & XU ACCEPTS NO LIABILITY FOR ANY
ACTIVITY THAT MIGHT BE CONSIDERED TO BE AN ILLEGAL AND/OR IMPROPER USE OF EMAIL.

**From:** "William R. Dunavant" <wrrrd@comcast.net>
**Date:** Tue, 4 May 2010 16:14:52 -0600
**To:** <elehman@lehmanlaw.com>
**Subject:** Confirmation

Ed, we are awaiting confirmation on the bank funding our project tonight; we will then need an
agreement with you to form the company in HK that will accept CD/BG/SBLC's.  Then we will wire you
$2.2 million USD, of which your fees will be paid out of. Then your firm will oversee the payment of
the BG/CD to the bank that will fund us on a $30 million Euro instrument in 60 days to our new
company, the payments will be 25% per every 15 days.  Then we will set a $150,000.00 retainer in

your account and get started.

Regards
Roger

William R Dunavant
435.658.1312
Work
435.659.6018. Mobile
wrrrd@att.blackberry.net
2624 Eagle Cove Dr.
Park City, Utah 84060

TAP_Busines....doc (669 KB)   certificate of....pdf (1.1 MB)   TAP_FUNDIN....xls (196 KB)   TAP_RR SBLC....oc (60.5 KB)

EIN and DEL....pdf (118 KB)   CIS TAP May...doc (427 KB)   may262009 ....pdf (1.7 MB)

# EXHIBIT J

000066

EXHIBIT "J"



**LEHMAN**
LEE & XU

Lehman, Lee & Xu  10-2 Liangmaqiao Diplomatic Compound No. 22 Dongfang East Road, Chaoyang District Beijing 100600 China  Tel: (86-10) 8532-1919  Fax: (86-10) 8532-1999  www.lehmanlaw.com

Kevin Christian, JD

Dear Kevin,

Please find below, the funds we have received to date.

| Date | Transferor | Amount Received | | Bank Charges | |
|------|-----------|---------|---|---------|---|
| 01-Jun-10 | Wind Chasers | $ | 32,992.29 | $ | 7.71 |
| 03-Jun-10 | Neuromed Devices Inc | $ | 399,982.28 | $ | 17.72 |
| 04-Jun-10 | Remy Law Offices PC | $ | 299,935.00 | $ | 65.00 |
| 04-Jun-10 | Nicholas Kowanko Revocable Trust | $ | 199,970.00 | $ | 30.00 |
| 07-Jun-10 | Rei Strategies LLC | $ | 199,970.00 | $ | 30.00 |
| | Total | $ | 1,132,850 | $ | 150 |

Please do not hesitate to contact me if you have any questions.

Best Regards,

Scott Garner, JD, CPA
Foreign Legal Counsel
Lehman, Lee & Xu

# EXHIBIT K

EXHIBIT "K"

From: Tim Nemeckay <tim@thenemeckaygroup.com>
Subject: FW: Action Items
Date: July 7, 2010 12:58:41 PM MDT
To: 'Philip Layfield' <philiplayfield@me.com>
Reply-To: tim@thenemeckaygroup.com

**From:** William R. Dunavant [mailto:wrrrd@comcast.net]
**Sent:** Tuesday, July 06, 2010 10:40 PM
**To:** elehman@lehmanlaw.com
**Cc:** tim@thenemeckaygroup.com; 'Kevin Christian'
**Subject:** Action Items

Ed, thank you for the time tonight on the call: I would like to go over the action items we discussed on the call:

1. ED per our call you are going to send TAGC USA an engagement letter.
2. ED per our call you were going to send TAGC USA the information and copies of all the corporate documents pertaining to and including the formation of TAGC HK.
3. ED per our call you were going to send TAGC USA the documents pertaining to and including the formation of the TAGC HSBC HK bank account.
4. ED per our call you were going to transfer the funds from the HSBC HK account to CHASE TAGC USA account on the first 3 signed client letters which amounts to approximately $450,000,00 Dollars.

1. ED, Tim sent you the TAGC USA corporate account papers.
2. ED, Tim sent you the schedule 1 TAGC bank account information on the client's letters.
3. ED, Tim sent you the IRS, EIN number for TAGC USA Corporation.
4. ED, Tim sent you 3 letters for the Escrow money to be transferred today from the TAGC HSBC HK account to TAGC Chase USA account.

Last we have a scheduled call to confirm the above items have been executed and our going forward plan at 11: am your time tomorrow Thursday.

Regards
Roger

William R Dunavant
435.658.1312 Work
435.659.6018. Mobile
wrrrd@att.blackberry.net
2624 Eagle Cove Dr.
Park City, Utah 84060

# EXHIBIT L

000068

EXHIBIT "L"

From: Tim Nemeckay <tim@thenemeckaygroup.com>
Subject: FW: Chase TAGC USA Account
Date: July 7, 2010 12:57:36 PM MDT
To: 'Philip Layfield' <philiplayfield@me.com>
Reply-To: tim@thenemeckaygroup.com

From: Edward E. Lehman [mailto:elehman@lehmanlaw.com]
Sent: Wednesday, July 07, 2010 10:38 AM
To: tim@thenemeckaygroup.com
Cc: 'William R. Dunavant'; 'Kevin Christian'; 'Brett Radford'; Scott Garner
Subject: Re: Chase TAGC USA Account

Dear Tim,
Best I can see TAGC is a fraud, and the request which has been made is tantamount to money laundering
as to what has been proposed. Nothing will be done for the time being.
I am seeking legal advice as to how to proceed.
-ed

Best regards,

E. E. Lehman

Sent from my BlackBerry-please excuse any typo, brevity and informal tones.

LEHMAN, LEE & XU
A Licensed Chinese Law Firm

10-2 Liangmaqiao Diplomatic Compound
No.22 Dongfang East Road Chaoyang District
Beijing 100600 China
Tel: (86)(10) 8532-1919
Fax: (86)(10) 8532-1999
E-mail: elehman@lehmanlaw.com
Web site: http://www.lehmanlaw.com

From: "Tim Nemeckay" <tim@thenemeckaygroup.com>
Date: Wed, 7 Jul 2010 09:41:19 -0600
To: <elehman@lehmanlaw.com>
ReplyTo: <tim@thenemeckaygroup.com>
Cc: 'William R. Dunavant'<wrrrd@comcast.net>; 'Kevin Christian'<kevin@purposedventures.com>;
'Brett Radford'<bradford@totalaccesspayments.com>; 'Scott Garner'<sgarner@lehmanlaw.com>
Subject: Chase TAGC USA Account

Ed, I have attached Chase documents that confirm the Total Access Global Capital account is set up with Chase.
Please note that Ryan Kohler Small Business Specialist was the bank office that set up the account. Ryan asked

000069

me to give him a heads up when the wire is sent, please drop me an email when wire is sent.

Thx U

Tim

## Timothy A. Nemeckay
**Nemeckay Group, Inc. & TAGC**
tim@thenemeckaygroup.com
**O: 435-604-0921**
**F: 888-772-1433**
**C: 954-295-5032**
**1526 Ute Blvd Suite 209**
**Park City, UT 84098**

The foregoing e-mail and any attachments thereto contain confidential information that may be legally privileged. Delivery of this message to anyone other than the intended recipient(s) is not intended to waive any privilege or confidentiality. If you have received this transmission in error, please alert the sender by reply e-mail and then delete this message and any attachments. This is neither a solicitation to buy nor an offer to sell securities. Sender is not a United States Securities Dealer or Broker or U.S. Investment Adviser.
Sender is a Consultant and makes no warranties or representations as to any respective parties or transactions. Information included in this email is not intended to constitute investment, financial planning, or tax advice.

IRS CIRCULAR 230 DISCLOSURE: Unless  explicitly stated to the contrary, this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of
(i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.439 / Virus Database: 271.1.1/2986 - Release Date: 07/06/10 18:36:00