UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAGC MANAGEMENT, LLC, a Nevada Limited Liability Company, TAGC I, LLC, a Nevada Limited Liability Company, and TOTAL ACCESS GLOBAL CAPITAL, LLC, a Texas Limited Liability Company,

                Plaintiffs,

-vs-

EDWARD EUGENE LEHMAN, an individual, KAROLINA LEHMAN, an individual, SCOTT GARNER, an individual, LEHMAN, LEE & XU LIMITED, a Hong Kong Corporation, HOME & GARDEN LIMITED, a Hong Kong Corporation, LEHMAN, LEE & XU PATENT AND TRADEMARK AGENTS LIMITED, a Hong Kong Corporation, LEHMAN, LEE & XU CORPORATE SERVICES LIMITED, a Hong Kong Corporation, LEHMAN, JONES & PARTNERS (HK) LIMITED, a Hong Kong Corporation, LEHMAN CGS LIMITED, a Hong Kong Corporation, LEHMAN & CO MANAGEMENT, LTD., a British Virgin Islands Company, and DOES 1-10 INCLUSIVE,

                Defendants.

10 Civ. 06563 (RJH)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      Plaintiffs TAGC Management, LLC, TAGC I, LLC, and Total Access Global Capital, LLC are a group of companies that attempted to start a credit card business in China. Defendants are a law firm, certain lawyers at the firm, and business entities related to the firm and the firm's principals, all located in China, who were to provide plaintiffs with legal and other professional services for plaintiffs' credit card business. After plaintiffs transferred over $1 million to defendants to begin the project, however, they became skeptical and demanded that the money

be returned.  Defendants refused to return the money, and plaintiffs subsequently initiated this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. ("RICO"), of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and several state law causes of action.  Defendant Scott Garner is an associate at the defendant law firm who billed ten hours to the project.  Garner, proceeding *pro se*, now moves to dismiss arguing that the Court lacks personal jurisdiction over him.  Garner is correct.  Because Garner has no connections whatsoever to New York, has never availed himself of the privilege of doing business in New York, and has not consented to this Court's jurisdiction, the Court lacks jurisdiction against him, and he is dismissed from this action.  For that reason, explained more fully below, Garner's motion is granted in its entirety.

## FACTUAL SETTING

Plaintiffs are Nevada and Texas limited liability companies with their principal places of business in Utah.  (Compl. ¶¶ 4-6.)  Defendant Lehman, Lee & Xu Limited (the "Lehman Firm") is a Hong Kong law firm with its principal place of business in Beijing, China, and offices located throughout mainland China, as well as in Chicago and New York in the United States.  (*Id*. ¶ 7, and Ex. B.)  Defendant Edward Eugene Lehman is an American citizen living in Beijing and is the Managing Director of the Lehman Firm.  (*Id*. ¶ 8, and Ex. A.)  Defendant Scott Garner is an attorney licensed by, and in good standing in, the state of Georgia.  (Unsworn Affidavit of Scott Garner  ("Garner Aff.") at unnumbered page 2; Compl. ¶ 11.)  Garner graduated from law school in 2007 and has since worked as an associate at the Lehman Firm.  (Garner Aff. at unnumbered page 2.)  Garner has no assets in New York, has never transacted business in New York, has no clients in New York, has never purposefully directed communications towards New

York, has no friends or relatives in New York, has "never visited or set foot in" New York, and does not practice law anywhere in the United States. (*Id*. at 1-2.)

In early 2010, William R. Dunavant, one of plaintiffs' principals, began communicating with the Lehman Firm in connection with the performance of a variety of legal and professional services relating mainly to a project for offering credit cards in China. (*See* Compl. ¶ 16, and Ex. E.) To that end, Dunavant and Lehman exchanged several emails on January 31, 2010, and February 1, 2010, concerning the details of the project. (*See generally* Compl. Ex. E.) Early in the morning on February 1, Lehman sent Dunavant an email urging that the project "needs to establish a presence in China immediately," and stating:

> Scott Garner (a CPA and JD who also has an MBA from Thunderbird) will coordinate this effort from a professional standpoint and will send you an engagement letter from out law firm under separate cover today . . . while you [] and I explore the more entrepreneurial side of this operation.

(*Id*. at unnumbered page 2.) Later on the same day, Garner emailed Dunavant stating:

> Lehman ask [sic] that I forward to you our standard retainer agreement with my proposed retainer amount . . . . [I] propose a retainer amount of USD 150,000. If you find the terms of our engagement letter acceptable, please sign the engagement letter . . . . As soon as out accounts department confirms receipt of the retainer amount, our attorneys will immediately begin work on this project.

(*Id*. at unnumbered page 1.) After this exchange, "Garner caused a proposal to be sent to [Dunavant] requesting that [Dunavant] place $2.2 million on deposit with [defendants]." (Compl. ¶ 19.) Plaintiffs do not allege that they signed this proposal, titled "Business Operations Agreement," and the copy included in the Complaint's exhibits is unsigned, contains several blank terms, and contains a "track changes" edit. (*See id*., and Ex. G at 4.)

In early May 2010, Dunavant and other principals at the plaintiff companies exchanged several rounds of emails with Lehman "regarding a potential new engagement involving a variety of financial transactions . . . including, but not limited, to, establishing a Hong Kong

3

corporation to act as a party to financial transactions and the establishment of a Hong Kong bank account." (Compl. ¶¶ 21-22.) It is unclear whether these transactions or discussions were part of, or otherwise related to, the earlier credit card project. Garner was copied on some, but not all, of the emails. (*See generally*, Compl. Exs. H, I.) Garner also sent an undated letter to a lawyer named Kevin Christian affiliated with plaintiffs listing "the funds we have received to date." (Compl. Ex. J; *see also* Compl. Ex. H.) These payments totaled $1,132,850, and the last of the five listed transfers occurred on June 7, 2010. (Compl. Ex. J.) Plaintiffs allege that these funds were transferred to defendants under certain escrow agreements between the parties relating to the projects the parties had been pursuing. (Compl. ¶¶ 23, 24.) Plaintiffs include as an exhibit an Escrow Agreement between the Lehman Firm and a Utah Corporation named Landshark Real Estate LLC otherwise not mentioned in any submission from either party. (*See* Compl. Ex. V at unnumbered page 9, 11.) Garner billed Dunavant for 9.8 hours at $420 per hour—a total of $4,116—between June 9, and June 30, 2010. (Pl.'s Opp'n Ex. B.)

      In early July 2010, the relationship between plaintiffs and Lehman apparently soured. Plaintiffs requested that the escrowed funds be returned. (Compl. ¶ 25.) And Lehman wrote back that "[b]est I can see TAGC is a fraud, and the request which has been made is tantamount to money laundering as to what has been proposed. Nothing will be done for the time being. I am seeking legal advice as to how to proceed." (Compl. Ex. L.) Plaintiffs then secured legal counsel and, after several emails between plaintiffs' counsel and Lehman, plaintiffs filed this action on September 2, 2010. Plaintiffs assert federal RICO and Exchange Act securities fraud claims, as well as state law claims for, *inter alia*, conversion, breach of fiduciary duty, professional negligence, fraud, unjust enrichment, and false advertising against all defendants. (*See generally* Compl. ¶¶ 43-101.) Plaintiffs allege that they "initially brought this action in the

United States District Court for the Central District of California on July 23, 2010," (*id*. ¶ 1), and that "[d]efendants Lehman Lee & Xu Limited [the Lehman Firm] and Lehman Jones & Partners (HK) Limited objected to the venue and contended that they had no contacts with the State of California and consented to jurisdiction in this Court pursuant to a Motion to Dismiss." (*Id*.)

Garner, proceeding *pro se*, filed this motion to dismiss for lack of personal jurisdiction in February 2011. Despite technical filing deficiencies, the Court accepted the motion in March, and plaintiffs have since filed opposition papers and Garner reply papers.

## DISCUSSION

"A court is 'obligated to dismiss an action against a defendant over which it has no personal jurisdiction' upon motion by that defendant." *Stone v. Ranbaxy Pharm., Inc.*, No. 10 Civ. 8816, 2011 WL 2462654, at *1 (S.D.N.Y. June 16, 2011) (quoting *In re Ski Train Fire*, 230 F. Supp. 2d 403, 406 (S.D.N.Y. 2002)). "A plaintiff opposing a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) 'bears the burden of establishing that the court has jurisdiction over the defendant'" *Anderson v. Marr*, No 10 Civ. 818, 2011 WL 3423694, at *4 (S.D.N.Y. July 18, 2011) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). Prior to discovery, the plaintiff need only plead facts which, if true, would establish jurisdiction over the moving defendant. *Id.*; *Stone*, 2011 WL 2462654 at *1. "At the pre-discovery stage, a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists, and any pleadings and other documents considered by the Court must be interpreted in the light most favorable to the plaintiff." *Anderson*, 2011 WL 3423694, at *4. "However, conclusory allegations are not enough to establish personal jurisdiction." *Capitol Records, L.L.C. v. SeeqPod, Inc.*, 09 Civ. 1584, 2010

5

WL 481228, at *2 (S.D.N.Y. Feb. 1, 2010) (quoting *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003)). Instead the allegations supporting jurisdiction "must be 'factually supported.'" *Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, 00 Civ. 5663, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"In assessing whether personal jurisdiction is authorized under New York law, the Court looks to whether the defendant is either 'present' in New York or has committed acts within the scope of New York's long-arm statute." *Ford v. Department of Soc. Servs.*, No 10 Civ. 3800, 2011 WL 1458138, at *2 (S.D.N.Y. Mar. 22, 2011) (citing N.Y. C.P.L.R. §§ 301, 302). Alternatively, personal jurisdiction may exist under Federal Rule of Civil Procedure 4(k)(2) when "(1) the plaintiff's cause of action arises under federal law, (2) the defendant is not subject to the jurisdiction of any one state, and (3) the exercise of personal jurisdiction over the defendant is consistent with the requirements of due process." *Kiobel v. Royal Dutch Petroleum Co.*, 02 Civ. 7618, 2010 WL 2507025, at *6 (S.D.N.Y. June 21, 2010) (citing *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008)).

### *N.Y. C.P.L.R. § 301*

N.Y. C.P.L.R. § 301 provides for personal jurisdiction with respect to any cause of action over a defendant who "is 'doing business' and is therefore 'present' in New York." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). Defendant must "do[] business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (internal quotation marks omitted). "In order to establish that this standard is met, a plaintiff must show that a defendant engaged in continuous, permanent, and substantial activity in New York." *Id.* (internal quotation marks omitted). New York courts consider several factors in this

6

analysis "including 'the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York.'" *Fagan v. Republic of Austria*, No. 08 Civ. 6715, 2011 WL 1197677, at *12 (S.D.N.Y. Mar. 25, 2011) (quoting *Xiu Feng Li v. Hock*, 371 F. App'x 171, 174 (2d Cir. 2010)).

Plaintiffs have neither alleged that Garner is engaged in continuous or substantial commercial activity in New York, nor alleged facts from which the Court can infer that this was the case. The extent of plaintiffs' allegations regarding Garner are (1) that he graduated from law school in Georgia and is licensed to practice law by Georgia; (2) that he authored an email to Dunavant and signed a letter to Christian, neither of whom appears to be located in New York; (3) that he was copied on some other emails; (4) that he billed close to ten hours to Dunavant in June 2010; and (5) that Lehman identified him as "coordinating" the credit card project "from a professional standpoint." But none of these allegations have anything whatsoever to do with business in New York.

Plaintiff also argues that Garner has solicited business in New York through the Lehman Firm's website and through the Lehman Firm's office in New York. (Pl.'s Opp'n at unnumbered pages 5, 6.) But nothing plaintiffs have presented to the Court indicates this is so. Certainly the presence of an office in New York and the solicitation of business in New York both support a finding of "doing business" jurisdiction in New York. *See Xui Feng Li*, 371 F. App'x at 174. But the office is the Lehman Firm's office, not Garner's office; and plaintiffs have offered the Court nothing but their conclusory assertion that Garner was soliciting business through that office to demonstrate that he actually was. It is plaintiffs' burden to establish that the Court has personal jurisdiction over the defendants. *Anderson*, 2011 WL 3423694, at *4. Faced with

7

Garner's affidavit that he has never transacted business in New York, has no clients in New York, has never been to New York, has never conducted business through the Lehman Firm's New York office, visited that office, or directed a communication to that office, plaintiffs' conclusory statement is insufficient.  *See Capitol Records*, 2010 WL 481228, at *2.

### *N.Y. C.P.L.R. § 302*

N.Y. C.P.L.R. §302, New York's long-arm statute, "confers jurisdiction over any non-domiciliary who transacts any business within the state so long as the cause of action arises from this conduct."  *Kennedy Johnson Gallagher, LLC v. Payne*, No. 10 Civ. 1363, 2010 WL 3958749, at *2 (S.D.N.Y. Oct. 5, 2010) (internal quotation marks and alterations omitted); *see also* N.Y. C.P.L.R. § 302(a)(1) ("a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state").  "[A] party transacts business within the state when it purposefully avails itself of the privilege of conducting activities within New York."  *Kennedy Johnson Gallagher*, 2010 WL 3958749, at *2 (quoting *Capitol Records*, 2010 WL 481228, at *4).  "A claim arises out of a party's transaction of business when there is a 'substantial nexus' between the transaction of business and the cause of action sued upon."  *Id*.

Plaintiffs' arguments as to how Garner purposefully availed himself of conducting business in New York and as to how this cause of action has a substantial nexus to Garner's activity fail.  First, plaintiffs argue that "Garner clearly and purposefully availed himself of the privilege of doing business in New York by conducting business through his employer's New York office."  (Pl.'s Opp'n at unnumbered page 7.)  But as addressed above, plaintiffs' conclusory assertion that Garner conducted business through the Lehman Firm's New York

office is insufficient to establish jurisdiction. Plaintiffs support their assertion by arguing that Garner is licensed to practice law in the United States. (*Id*.) But Garner is licensed in Georgia, not New York; nothing about that fact in any way suggests that Garner was conducting or soliciting business in New York, or that the business Garner conducted or solicited in New York had any nexus to this action.

Plaintiffs also argue that the Lehman Firm and Lehman Jones & Partners (HK) Limited "have specifically consented to jurisdiction in this Court by means of a Declaration filed in conjunction with [those entities'] motions to dismiss the related action in the Central District of California." (*Id*.) Even if that is so, however—and plaintiffs have not, for example, included the "Declaration" as an exhibit in this action—this would not be sufficient to establish personal jurisdiction over *Garner*. "Parties may waive a personal jurisdiction defense by consent, and jurisdiction based on consent satisfies the requirements of due process." *Ainbinder v. Potter*, 282 F. Supp. 2d 180, 185 (S.D.N.Y. 2003). But the Lehman Firm is not an agent of Garner, its associate, and its unilateral consent to jurisdiction here does not bind Garner. Garner never consented to jurisdiction here; and therefore the Lehman Firm's consent is irrelevant.

Plaintiffs finally attempt to rebut Garner's assertion that he was not heavily involved in plaintiffs' projects with the Lehman Firm by pointing to Garner's ten hours of work billed to Dunavant and Lehman's email indicating that Garner would coordinate the professional side of the operation. But as with plaintiffs' prior argument, plaintiffs fail to explain how even Garner's heavy involvement in the credit card project would constitute purposeful availment of the privilege of doing business in New York. Nothing plaintiffs have alleged that Garner did is in any way connected to or directed towards New York.

*Federal Rule of Civil Procedure 4(k)(2)*

Plaintiffs finally assert that jurisdiction is proper over Garner pursuant to Rule 4(k)(2). "To establish personal jurisdiction over a defendant pursuant to Federal Rule of Civil Procedure 4(k)(2), a plaintiff must show that (1) the plaintiff's cause of action arises under federal law, (2) the defendant is not subject to the jurisdiction of any one state, and (3) the exercise of personal jurisdiction over the defendant is consistent with the requirements of due process." *Kiobel*, 2010 WL 2507025, at *6 (citing *Porina*, 521 F.3d at 127); *see also* Fed. R. Civ. P. 4(k)(2) ("For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."). "Rule 4(k)(2) is designed to fill a gap in the enforcement of federal law for courts to exercise personal jurisdiction over defendants having sufficient contacts with the United States to justify the application of United States law . . . but having insufficient contact with any single state to support jurisdiction under state long-arm legislation." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004).

Plaintiffs claims, in part, arise under RICO and therefore under federal law. But, "[a]s to the second element, although the Court has already found that [Garner is] not subject to personal jurisdiction in New York, Plaintiffs have not certified that [Garner is] not subject to jurisdiction in any other state." *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010).[1]

But even if that were so—*i.e.*, even if Garner were not subject to jurisdiction in any one state—the Court would still lack jurisdiction over Garner because the exercise of that jurisdiction pursuant to Rule 4(k)(2) would not comport with due process. Due process for purposes of Rule

---

[1] Garner's apparent expatriate status, however, appears to render him "stateless" for purposes of jurisdiction and therefore Garner might lack domicile in any state, including, for example, Georgia. *See Kamel v. Hil-Rom Co., Inc.*, 108 F.3d 799, 805 (7th Cir. 1997).

10

4(k)(2) requires (1) that the defendant have sufficient minimum contacts with the United States in general, rather than any particular state; and (2) that the exercise of jurisdiction is reasonable. *Porina*, 521 F.3d at 127.  The first step of the analysis, minimum contacts with the United States, is a "more stringent" test than that in the more-common minimum contacts analysis for purposes of states' long-arm statutes.  *NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 404 (S.D.N.Y. 2009) ("plaintiff must satisfy the more stringent minimum contacts test by showing that the defendant had continuous and systematic general business contacts with the United States.  This standard requires plaintiff to prove that defendant's contacts approximate physical presence in the United States." (internal quotation marks, citations, and alterations omitted; citing *Porina*, 521 F.3d at 128; *BBC Chartering & Logistic GmBH & Co. KG v. Usiminas Mecanica S/A*, No. 08 Civ. 200, 2009 WL 259618, at *5 (S.D.N.Y. Feb. 4, 2009)).  The "contacts with the particular federal district in which the suit was filed, or lack thereof, may be relevant in determining, at the second stage of the analysis, whether it would be reasonable, in all the circumstances, to exercise personal jurisdiction."  *Porina*, 521 F.3d at 127.  In ruling on reasonableness, the Court should also consider "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *Tamam*, 677 F. Supp. 2d at 731.

      Plaintiffs argue that Garner directed at least two communications (his email to Dunavant and his letter to Christian) to plaintiffs in the United States, and that Garner's activity, as part of defendants' scheme, had an effect in the United States since plaintiffs' losses were felt in the United States.  (Pl.'s Opp'n at unnumbered pages 10-11.)  As to the latter point, the mere

11

occurrence of plaintiffs' injury in the United States does not satisfy minimum contacts for Rule 4(k)(2).  *See Hartford Fire Ins. Co. v. M/V MSC INSA*, 03 Civ. 2196, 2003 WL 22990090, at *4 (S.D.N.Y. Dec. 18, 2003) (for effects in United States to be sufficient under Rule 4(k)(2), effects must be broadly felt throughout the country); *see also Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 456 (3d Cir. 2004) (injury in United States, alone, insufficient); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 622-24 (1st Cir. 2001) (effects in the United States alone insufficient absent purposeful availment by the defendant in question or when defendant's tort occurred in the United States).  The conduct of which plaintiff complains here, namely Garner's activity in defendants' purported scheme, occurred only in China, not in the United States.  The mere fact that Garner participated in defendants' scheme, the consequences of which were felt at least in part in the United States, is therefore insufficient to confer jurisdiction under Rule 4(k)(2).

Neither are Garner's one or two communications to plaintiffs' principals or lawyers.  *See Heinfling v. Colapinto*, 946 F. Supp. 260, 264 n.2 (S.D.N.Y. 1996) (single phone call does not satisfy minimum contacts); *see also Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [an out-of-state resident], to litigate this claim in a New York forum on the basis of one telephone call."); *Mayes v. Leipziger*, 674 F.2d 178, 184-85 (2d Cir. 1982) (out-of-state letters and phone calls insufficient).  Indeed, courts in this district have found minimum contacts lacking in Rule 4(k)(2) analysis when the defendant in question had far more connection with the United States than does Garner.  *See, e.g.*, *Nursan Metalurji Endustrisi A.S. v. M/V TORM GERTRUD*, No. 07 Civ. 7687, 2009 WL 536059, at *3-4 (S.D.N.Y. Feb. 27, 2009) (no minimum contacts with United States sufficient for 4(k)(2) when

defendant had an office in Connecticut and owned several ships that conducted trade in American ports).

Plaintiffs have not established that Garner is not subject to jurisdiction in any state, and the exercise of jurisdiction pursuant to Rule 4(k)(2) over Garner would violate due process. Accordingly, the Court does not have personal jurisdiction over Garner under that rule.[2]

---

[2] Though they do not, plaintiffs might have attempted to invoke 18 U.S.C. § 1965(b) to argue that personal jurisdiction over Garner, an alleged RICO conspirator, is proper because personal jurisdiction over the Lehman Firm, another RICO conspirator is proper in New York since the firm maintained an office in New York. 18 U.S.C. § 1965(b) provides that "[i]n any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." 18 U.S.C. § 1965(b). "To establish jurisdiction pursuant to Section 1965, the plaintiff must show that the court has personal jurisdiction as to at least one defendant based on minimum contacts, and that the ends of justice require the exercise of jurisdiction." *First Central Savings Bank v. Meridian Residential Capital*, 09-CV-3444, 2011 WL 838910, at *10 (E.D.N.Y. Mar. 3, 2011) (citing *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998)). "The phrase 'ends of justice require' has been interpreted to mean that the statute authorizes an assertion of personal jurisdiction if, otherwise, the entire RICO claim could not be tried in one civil action." *Id.* (citing *PT United*, 138 F.3d at 71-72). Because plaintiff alleges that the Lehman Firm maintained a New York office, plaintiff has likely sufficiently alleged that the Lehman Firm is subject to personal jurisdiction in New York. *See Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x 101, 102 (2d Cir. 2010). And it does not appear that plaintiffs could get jurisdiction over all defendants in any other single district, thereby satisfying the "ends of justice" requirement of 18 U.S.C. § 1965(b). *First Central*, 2011 WL 838910, at *10. But plaintiffs have neither alleged nor argued that they served Garner in a United States district through a marshal in that district. And as this explicit requirement of the statute is not met, jurisdiction cannot lie under 18 U.S.C. § 1965(b). *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 600-01 & n.8 (S.D.N.Y. 1998) (personal jurisdiction under 1965(b) established only if defendant is served within the United States); *Nordic Bank PLC v. Trend Grp., Ltd.*, 619 F. Supp. 542, 564 (S.D.N.Y. 1985).

It bears mentioning that plaintiffs' attachment of an affidavit of service executed by Augustus Wilson, a service agent, upon "JANE SMITH . . . AUTHORIZED to accept for [Garner]," as an exhibit to their opposition to the non-*pro se* defendants' pending motion to dismiss—not addressed in this opinion—(*see* Pl.'s Opp'n to defendants Edward Eugene Lehman, et al.'s, Motion to Dismiss Ex. F at unnumbered page 3) is insufficient to establish that Garner was served by a United States marshal in a United States district. First, Wilson appears to be a service agent, not a marshal. Second, Garner has submitted an affidavit stating that he has never consented to or authorized another person's receipt of service on his behalf. *See Bell v. Manhattan Motorcars, Inc.*, No. 06 Civ. 4972, 2008 WL 2971804, at *5 (S.D.N.Y. Aug. 4, 2008) ("denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit . . ."). Third, the woman purportedly authorized to accept service for Garner did not sign the service affidavit. *See Stone*, 2011 WL 2462654, at *7 ("though Plaintiffs assert that Ranbaxy Lab was properly served through delivery of the summons and complaint to Mr. Ahmad Aboelezz, Mr. Aboelezz did not sign the affidavit . . .").

## CONCLUSION

For the foregoing reasons, defendant Scott Garner's motion to dismiss [34] is GRANTED and plaintiffs' claims against Scott Garner are dismissed in their entirety.

SO ORDERED.

Dated: New York, New York
       August 24, 2011

_____
Richard J. Holwell
United States District Judge