UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAGC MANAGEMENT, LLC, a Nevada
Limited Liability Company, TAGC I, LLC, a
Nevada Limited Liability Company, and TOTAL
ACCESS GLOBAL CAPITAL, LLC, a Texas
Limited Liability Company,

                            Plaintiffs,                    10 Civ. 6563 (RJH)

            -vs-                                           **MEMORANDUM OPINION**
                                                           **AND ORDER**

EDWARD EUGENE LEHMAN, an individual,
KAROLINA LEHMAN, an individual, SCOTT
GARNER, an individual, LEHMAN, LEE & XU
LIMITED, a Hong Kong Corporation, HOME &
GARDEN LIMITED, a Hong Kong Corporation,
LEHMAN, LEE & XU PATENT AND
TRADEMARK AGENTS LIMITED, a Hong
Kong Corporation, LEHMAN, LEE & XU
CORPORATE SERVICES LIMITED, a Hong
Kong Corporation, LEHMAN, JONES &
PARTNERS (HK) LIMITED, a Hong Kong
Corporation, LEHMAN CGS LIMITED, a Hong
Kong Corporation, LEHMAN & CO
MANAGEMENT, LTD., a British Virgin Islands
Company, and DOES 1-10 INCLUSIVE,

                            Defendants.

Richard J. Holwell, District Judge:

        Plaintiffs TAGC Management, LLC, TAGC I, LLC, and Total Access Global Capital,

LLC are a group of companies that attempted to start a credit card business in China.  Defendants

are a law firm as well as business entities and individuals related to the firm, all located in China,

that plaintiffs had retained for legal and other professional services in preparation for plaintiffs'

credit card business project in China.  After plaintiffs transferred over $1 million to defendants to

begin the project, however, the relationship soured and plaintiffs demanded that the money be

returned.  Defendants refused to return the money, and plaintiffs subsequently initiated this

action alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

§§ 1961 *et seq.* ("RICO"), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. § 78j(b), Sections 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A),

and several state law causes of action.  *Pro se* defendant Scott Garner, an associate at the

defendant law firm Lehman, Lee & Xu Ltd., had previously moved to dismiss, and the Court

granted that motion for lack of personal jurisdiction over Garner.  The remaining defendants,

alleging that plaintiffs' service of process was defective, now move to dismiss pursuant to Fed.

R. Civ. P. 12(b)(5).  For the reasons explained below, their motion is GRANTED in part and

DENIED in part.  The Court deems plaintiffs' service of process on corporate defendant

Lehman, Lee & Xu Ltd. to be valid and GRANTS plaintiffs' application for an order of

attachment against Lehman, Lee & Xu Ltd..   Plaintiffs are given leave to effect proper service of

process upon corporate defendant Lehman, Jones & Partners (HK) Ltd., which had consented to

jurisdiction in this Court during a related action previously filed in California court.

## FACTUAL SETTING

Plaintiffs are limited liability companies incorporated in Nevada and Texas with principal

places of business in Utah.  (Compl. ¶¶ 4-6.)  Corporate defendant Lehman, Lee & Xu Ltd. (the

"Lehman firm") is a Hong Kong company with its principal place of business located in Beijing,

China and, according to an undated printout from a webpage that the Lehman firm has since

removed from its website, a New York office located at 410 Park Avenue 15th Floor,

PMB#1205, New York, NY 10022 (*Id.* ¶ 7, and Ex. B.)  Corporate defendants Lehman, Jones &

Partners (HK) Ltd., Lehman, Lee & Xu Patent and Trademark Agents Ltd. ("LLX P & T"),

Lehman & Co. Management Ltd. ("L & Co."), Lehman, Lee & Xu Corporate Services Ltd.,

Lehman CGS Ltd., and Home & Garden Ltd. ("H&G") are Hong Kong and British Virgin

Islands companies which plaintiffs allege have principal places of business in Beijing, China and

operate out of a New York office located at 410 Park Avenue 15th Floor, PMB#1205, New York,

NY 10022.  (Compl. ¶¶  7 and 10.)  Individual defendant Edward E. Lehman ("Lehman"), the

Managing Director of the Lehman firm as well as the president and sole owner of L & Co. and

LLX P & T, is a U.S. citizen residing in Beijing, China.  (Compl. ¶  8; Affidavits of Edward E.

Lehman ("Lehman Affs").)   Individual defendant Karolina Lehman, the president and sole

owner of H&G, is a Polish citizen residing in Beijing, China who has never lived, worked, or

done business in New York.  (Compl. ¶ 9; Affidavits of Karolina Lehman ("Karolina Affs.").)

During the period roughly spanning February to early July of 2010, plaintiffs retained the

Lehman firm for legal and professional services to start a credit card business in China and

allegedly transferred to the firm over $ 1 million in various escrow accounts on behalf of

plaintiffs' client investors.  (Compl. ¶¶  16-23, and Ex. J.)  In early July 2010, the relationship

between plaintiffs and defendant Lehman deteriorated.  After Lehman refused to confirm in

writing that he had set up a Hong Kong bank account for plaintiff Total Access Global Capital

and transferred the funds from escrow to this Hong Kong bank account, as he allegedly promised

to do in a recorded phone conversation, plaintiffs demanded that the funds be either returned to

the original investors or back to plaintiff Total Access Global Capital's U.S. bank account for a

new set of escrow instructions.  (*Id.* ¶¶ 24-25, and Ex. K.)

In response to the request that funds be moved back to plaintiff Total Access Global Capital's U.S. bank account, Lehman wrote that "TAGC is a fraud, and the request which has been made is tantamount to money laundering . . . .  Nothing will be done for the time being." (*Id.* Ex. L.)  Plaintiffs engaged legal counsel to request the return of funds to plaintiffs' account and after attempting to resolve the issue through a series of email communications, filed an action in this Court on September 3, 2010.  Plaintiffs had previously brought this action in the United States District Court for the Central District of California in July 2010 (Case No. 10-CV-05447 PSG (JEMx)).  Two corporate defendants, the Lehman firm and Lehman, Jones & Partners (HK) Ltd., had objected to the California venue and consented to jurisdiction in this Court by means of a declaration filed in conjunction with their motion to dismiss.  Accordingly, plaintiffs dismissed the action in California without prejudice and re-filed in this Court.  (Compl. ¶¶ 1 and 13.)

On September 20, 2010, all seven corporate and individual defendants were allegedly served by hand delivery of a copy of the summons and complaint at 410 Park Avenue 15th Floor, PMB#1205, New York, NY 10022 ("410 Park Avenue, New York").  The documents were served on a woman identified in the affidavits of service as "Jane Smith", who apparently refused to state her true name but held herself out as someone authorized to accept service on behalf of all corporate and individual defendants.   (Pls' Opp'n Defs.' Mot. Dismiss at 4, Exs. E and F.)  Plaintiffs also make the puzzling claim that "[t]he process server effectuated service on the security guard of the building who refused to allow the process server access to the office suite listed as [defendants'] proper business address."  (*Id.* at 4.)  It is not clear whether the security guard and "Jane Smith" are the same individual, and whether the process server effectuated service by either gaining access to office suite 1205 at a later point in time or by

serving "Jane Smith" in the office building lobby. A copy of the summons and complaint was also mailed to each defendant at 410 Park Avenue, New York, which plaintiffs claim is the defendants' last known place of mailing. (*Id.* at Exs. E and F.)

Defendants now move to dismiss the complaint for failure to effect service of process on all defendants. Specifically, they claim that service on the individual defendants Edward and Karolina Lehman was defective under Fed. R. Civ. P. 4 because (1) their address for service is in Beijing, China, and (2) 410 Park Avenue was neither individual defendant's actual place of business, location of physical presence on a regular basis, or site of physical proximity to their residence. Defendants also claim that service on the corporate defendants was defective under Fed. R. Civ. P. 4, Section 311(a) of the New York Civil Practice Law and Rules ("CPLR"), as well as Sections 306 and 307(a) of the New York Business Corporation Law ("BCL") because they are foreign corporations not authorized to do business in New York, and plaintiffs failed to effect personal service on any officer, director, managing agent, or general agent of the entities named. (Defs.' Mot. Dismiss at 4-6.)

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(5) for deficient service of process, "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir. 2005)); *see Kwan v. Schlein,* 441 F.Supp.2d 491, 496 (S.D.N.Y. 2006). Plaintiff must meet this burden by making a prima facie case of proper service "through specific factual allegations and any supporting materials," *Kwon v. Yun,* No. 05 Civ. 1142 (GEL), 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006), and conclusory statements alone are not sufficient to overcome a

defendant's sworn affidavit that service was improper.  *Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F.Supp.2d 382, 387 (S.D.N.Y. 2002).

When considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, "a court must look to matters outside the complaint to determine whether it has jurisdiction." *Mende v. Milestone Tech., Inc.,* 269 F.Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting *Darden v. DaimlerChrysler*, 191 F.Supp.2d at 387).  "If service of process was not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory."  *Darden v. DaimlerChrysler*, 191 F.Supp.2d at 387.  The Court may, for example, simultaneously grant a defendant's Rule 12(b)(5) motion to dismiss and a plaintiff leave to properly serve that defendant.  *Stone v. Ranbaxy Pharm., Inc.*, No. JFM–10–CV–08816, 2011 WL 2462654, at *6 (S.D.N.Y. June 16, 2011).

## I.  Individual Defendants: Edward and Karolina Lehman

### A.  Lack of Personal Jurisdiction

The Second Circuit in *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)  has summarized the two-prong test for whether a court has personal jurisdiction as follows:

> The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.  For purposes of this initial inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. . . . The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of

fair play and substantial justice-that is, whether it is reasonable under the circumstances of the particular case.

*Metro. Life Ins. Co.*, 84 F.3d at 567-68 (internal quotations and citations omitted).

Both general and specific personal jurisdiction over foreign defendants are authorized under New York law pursuant to CPLR §§ 301-302. *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F.Supp.2d 352, 358 (S.D.N.Y. 2004). Under CPLR § 301, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a "continuous and systematic course of doing business in New York." *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir. 1985) (foreign corporation); *ABKCO Indus., Inc. v. Lennon,* 377 N.Y.S.2d 362, 366-67 (Sup. Ct. 1975), *modified*, 384 N.Y.S.2d 781, 784 (App. Div. 1st Dep't 1976) (foreign individual). Under CPLR § 302, New York's "long-arm statute", specific jurisdiction arises when the defendant's activities, whether performed in person or through an agent, are the subject of the action before the court. This Court has specific jurisdiction when, for example, a defendant transacted business within New York or contracted anywhere to supply goods or services in New York, committed a tortious act within New York, or, in more limited circumstances, committed a tortious act without New York causing injury to person or property within New York. *See* N.Y. C.P.L.R. 302(a)(1)-(3) (McKinney 2005). New York's long-arm jurisdiction extends to an individual acting as a corporate agent, when the corporation transacted business in New York and is thereby subject to personal jurisdiction under CPLR § 302(a)(1). *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 463 & 467 (1988) (holding that the fiduciary shield doctrine, which shields an individual corporate agent from jurisdiction if his dealings in the forum were solely in a corporate capacity, cannot be invoked to insulate an individual defendant who has not physically entered New York from personal

jurisdiction under CPLR § 302(a)(1)).  Proof of one single transaction in New York is sufficient

to invoke such personal jurisdiction over an individual corporate agent defendant under CPLR §

302(a)(1), provided "the defendant's activities [in New York] were purposeful and there is a

substantial relationship between the transaction and the claim asserted."  *Id*. at 467 (internal

citations omitted).

Here, other than a webpage printout from the Lehman firm's website indicating the

contact information for its New York office and the conclusory statement that individual

defendants conduct business through the office located at 410 Park Avenue, New York, plaintiffs

have furnished no evidence of even a single transaction or tortious act within or affecting New

York that would subject individual defendants Edward and Karolina Lehman to personal

jurisdiction in a New York court.  Neither can this Court impute long-arm jurisdiction to the

individual defendants as agents of the corporate defendants, since plaintiffs failed to provide

evidence that any corporate defendant transacted business in New York and is therefore subject

to personal jurisdiction under CPLR § 302(a)(1).

### B.  Improper Service

Fed. R. Civ. P. 4(e)(1) provides that service upon an individual within a judicial district

of the United States can be effected pursuant to the laws of the forum state in which the

individual is to be served.  New York law allows service upon an individual by "delivering the

summons within the state to a person of suitable age and discretion at the actual place of

business, dwelling place or usual place of abode" of the individual and then mailing a copy of the

summons to either the last known residence or actual place of business.  N.Y. C.P.L.R. 308(2)

(McKinney 2005).  "New York courts have construed 'actual place of business' to include (1) a

place where the defendant regularly transacts business, or (2) an establishment that the defendant

owns or operates, where there is a clear identification of the work performed by her with that place of business." *Velez v. Vassallo*, 203 F.Supp.2d 312, 325 (S.D.N.Y. 2002) (internal quotations and citations omitted).

For the purpose of service of process, a defendant can have more than one "actual place of business". *Id.* at 325-26; *see* N.Y. C.P.L.R. 308(6) (McKinney 2005) (defining "actual place of business" to include "*any* location that the defendant, through regular solicitation or advertisement, has held out as its place of business.") (emphasis added); *Gibson, Dunn & Crutcher LLP v. Global Nuclear Servs. & Supply, Ltd.*, 721 N.Y.S.2d 315, 317 (App. Div. 1st Dep't 2001) (finding an address to be defendant's actual place of business for purpose of service because defendant held it out as his business address and induced plaintiff's reliance by, among other things, receiving business mail at said address even though "defendant may have conducted business elsewhere at times"); *Columbus Realty Inv. Corp. v. Weng-Heng Tsiang*, 641 N.Y.S.2d 265, 266 (App. Div. 1st Dep't 1996) ("[I]nasmuch as appellant was an officer and co-owner of the business where CPLR 308(2) service was made, . . . it is not significant that she worked mainly from her house rather than the place of business.").

Furthermore, as the 2011 Supplementary Practice Commentary to the CPLR clarifies in C308:7, for purposes of service of process upon a natural person under CPLR § 308, service is proper at any address that "may have been established by the defendant solely for the convenience of receiving business correspondence and is not a place where any of the defendant's actual business activities are conducted.  [CPLR § 308(6)] is premised on the notion that where the defendant advertises an address of this nature as his or her place of business, a plaintiff, in reliance on defendant's advertising, should be able to make service of process at that location."

Plaintiffs have failed to furnish any evidence that individual defendants have held out 410 Park Avenue, New York to be their actual place of business by receiving business mail there, advertising it as their place of business, or any other action that may have induced plaintiffs' reliance.  A webpage from the Lehman firm's website containing the New York office's contact information in no way indicates that individual defendants have held out 410 Park Avenue as their actual place of business, and any conclusory statement to the contrary on the plaintiffs' part is not enough to overcome individual defendants' sworn affidavits stating that their actual place of business is in Beijing, China.[1]

## II.  Corporate Defendants: the Lehman Firm and Lehman Jones & Partners (HK) Ltd.

### A.  Valid Personal Jurisdiction due to Consent

This Court has personal jurisdiction over two corporate defendants, the Lehman firm and Lehman, Jones & Partners (HK) Ltd., by virtue of their consent to jurisdiction in a declaration filed with their motion to dismiss in the related action previously filed in the Central District of California.  *See* Lehman Decl. ¶ 7, August 20, 2010, ECF No. 15, *TAGC Mgmt., LLC, et al. v. Lehman, Lee & Xu, Ltd.*, *et al.*, No. CV10-5447-PSG (JEMx) (C.D. Cal. Aug. 23, 2010). The requirement of personal jurisdiction is a waivable right, and a litigant can use a "variety of legal arrangements" to give "express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).  In the commercial context, parties often stipulate in advance to a particular jurisdiction for the resolution of any controversies that may arise.  "Where such forum-selection provisions have been obtained

---

[1] If, as seems likely, the individual defendants live and work abroad, service may be made pursuant to Fed. R. Civ. P. 4(f).

through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Burger King Corp.*, 471 U.S. at 473 n.14 (internal quotations and citations omitted).

### B. Service of Process is Valid as to the Lehman Firm and Improper as to Lehman Jones & Partners (HK) Ltd.

Defendants concede that the Lehman firm "is not contesting service and is not moving to dismiss on defective process grounds." (Brief in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Complaint at 3-4.) At issue, then, is the validity of service upon Lehman Jones & Partners (HK) Ltd.. Fed. R. Civ. P. 4(h)(1) provides that service upon a corporate defendant within a U.S. judicial district can be executed either in a manner authorized by the laws of the forum state in which the corporation is served (citing Fed. R. Civ. P. 4(e)(1)), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of each to the defendant".

The New York law provisions relevant to service of process upon foreign corporations are CPLR § 311(a), BCL § 306, and BCL § 307(a). CPLR § 311(a) states the following pertinent part:

(a) Personal service upon a corporation . . . shall be made by delivering the summons as follows:

1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service. A business corporation may also be served pursuant to section three hundred six or three hundred seven of the business corporation law. . . .

(b) If service upon a domestic or foreign corporation within the one hundred twenty days allowed by section three hundred six-b of this article is impracticable under paragraph one of subdivision (a) of this section or any other law, service upon the corporation may be made in such manner, and proof of service may take such form, as the court, upon motion without notice, directs.

BCL § 307(a), which governs service of process upon unauthorized foreign corporations, states the following:

In any case in which a non-domiciliary would be subject to the personal or other jurisdiction of the courts of this state under article three of the civil practice law and rules, a foreign corporation not authorized to do business in this state is subject to a like jurisdiction. In any such case, process against such foreign corporation may be served upon the secretary of state as its agent. Such process may issue in any court in this state having jurisdiction of the subject matter.

BCL § 306, which governs service of process upon domestic or authorized foreign corporations, is not relevant since neither party in the present action has furnished evidence that any corporate defendant is authorized to do business in the state of New York.

Plaintiffs have failed to establish that the "Jane Smith" who allegedly accepted service on behalf of all defendants at 410 Park Avenue, New York is an "officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." Indeed, it appears she may be the building's security guard. "In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service. As long as the process server's reliance on corporate personnel is *reasonable*, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept service." *Id.* (internal citations omitted) (emphasis added). In the present action, service upon a non-employee security guard who identified herself as authorized to accept service but refused to

12

give out her real name hardly seems like reasonable reliance on the server's part, especially given the complete absence of other supporting evidence.

### III. Remaining Five Corporate Defendants − Lack of Personal Jurisdiction and Improper Service

For the reasons set forth above, this Court also lacks personal jurisdiction over the remaining five corporate defendants:  Lehman, Lee & Xu Patent and Trademark Agents Ltd. ("LLX P & T"), Lehman & Co. Management Ltd. ("L & Co."), Lehman, Lee & Xu Corporate Services Ltd., Lehman CGS Ltd., and Home & Garden Ltd. ("H&G").  Plaintiffs have provided no evidence of a single transaction or tortious act within or affecting the United States, let alone the State of New York, that would indicate this Court can exercise general or specific personal jurisdiction over these five foreign corporations pursuant to CPLR §§ 301-302.  Even assuming *arguendo* that this Court has valid personal jurisdiction over the five corporate defendants, service upon them at 410 Park Avenue, New York would still be improper for the same reasons that service was improper upon Lehman, Jones & Partners (HK) Ltd..

### IV. Service via Email is Improper Because Conventional Methods of Service Do Not Appear Impracticable

In their opposition to defendants' motion to dismiss, plaintiffs cross-moved under CPLR § 311(b) and § 308(5) requesting the Court to approve service via email upon defendants because traditional methods of service were impracticable.  Apparently a copy of the summons and complaint were emailed to defendants' attorney on September 16, 2010 and to individual defendant Mr. Lehman on September 23, 2010.  (Pls' Opp'n Defs.' Mot. Dismiss at 7-8; Exs. H

and I.).  In support of this request, plaintiffs cited exclusively to *Snyder v. Alternate Energy, Inc*., 857 N.Y.S.2d 442 (N.Y.C. Civ. Ct. 2008), in which the court granted plaintiff the right to serve the pleading by email when other forms of service were impracticable.

A court order directing the method of service under CPLR § 308(5), while not requiring "proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute", does requires proof of impracticability in using other forms of service.  *Rampersad v. Deutsche Bank Sec., Inc*., No. 02 Civ. 7311 (LTS) (AJP), 2003 WL 21073951, at *1 (S.D.N.Y. May 9, 2003).  "The meaning of 'impracticable' depends on the facts and circumstances of a particular case."  *Id.* (internal citation omitted).  The court in *Snyder* approved service by email only after plaintiffs undertook a diligent but unsuccessful search for the defendants' physical addresses.  The *Snyder* plaintiffs' previous application to the court seeking approval of service by email was denied but given leave to renew with a more detailed explanation of the efforts made to locate defendants' physical whereabouts.  The plaintiffs' new application contained a detailed record of rigorous efforts to locate defendants at more than one address in two different states; additionally, the presiding judge subsequently requested a memorandum of law supporting the application and heard oral argument on the issue.  *Snyder*, 857 N.Y.S.2d at 443-45.  In the present case, plaintiffs have made no showing of impracticable service by traditional methods such as previous unsuccessful efforts to locate and serve defendants.

### V.  Plaintiffs' Application for an Order of Attachment

Fed. R. Civ. P. 64 provides that the remedy of attachment is governed by the law of the state in which the court is located.  CPLR § 6212 governs the issuance of orders of attachment in New York and requires that plaintiffs establish the following four things by affidavit or other written

evidence: (1) that there is a cause of action; (2) that it is probable that the plaintiff will succeed on the merits; (3) that one or more grounds for attachment provided in CPLR § 6201 exist; and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.  *See* N.Y. C.P.L.R. 6212(a).  As to the first two requirements for issuing an order of attachment under CPLR § 6212(a), "the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts."  *Bank of Leumi Trust Co. v. Istim, Inc*., 892 F. Supp. 478, 482 (S.D.N.Y. 1995) (citations and internal quotations omitted).

The third and fourth requirements of CPLR § 6212(a) are satisfied because both the Lehman Firm and  Lehman Jones & Partners (HK) Ltd. are foreign corporations not qualified to do business in the State of New York − a ground for attachment provided in CPLR § 6201(1), New York's nonresident attachment statute − and because defendants have not made any counterclaims.  (*See* Declaration of Philip J. Layfield in Support of Plaintiffs' Application for an Order of Attachment ¶¶ 6, 8-9, ECF No. 82-1.)  Under New York law, satisfaction of the statutory criteria for issuing an order of attachment is not a guarantee that the court will issue such a relief.  "[S]uch relief is discretionary, and since attachment is a harsh remedy, the court must exercise care in its application." *Musket Corp. v. PDVSA Petroleo S.A.,* 512 F.Supp.2d 155, 160 (S.D.N.Y. 2007)  The Second Circuit in *ITC Entertainment, Ltd. v. Nelson Film Partners* gave the following clarifications on New York's nonresident attachment statute CPLR § 6201(1):

> New York's nonresident attachment statute is designed to serve two independent purposes: obtaining jurisdiction over and securing judgments against nondomiciliaries residing without the state. New York courts have long recognized that provisions for attachment against nonresidents are based on the assumption that "[t]here is much more propriety in requiring a debtor, whose domicile is without the state, *to give security for the debt,* than one whose domicile is within. Such a debtor, pending litigation, might sell his property, and remain at home, in which event he could not be reached by any of the provisional remedies or supplementary proceedings provided by [New York] laws."  New York courts have expressly interpreted . . . § 6201(1) as . . . permitting attachment

15

even when the court already has personal jurisdiction over the nonresident defendant.

714 F.2d 217, 220 (2d Cir. 1983) (internal citation omitted) (emphasis in original).

"Where . . . jurisdiction over the defendant is conceded and attachment is sought only to secure a judgment, the mere fact that defendant is a non-domiciliary residing without the State of New York is not sufficient ground for granting an attachment. Instead, a reviewing court must determine whether the defendant has assets within the State that could satisfy a judgment and whether petitioner's fear that the judgment will not be satisfied is reasonable." *Moran v. Arcano*, No. 89 Civ. 6717 (CSH), 1990 WL 96761, at *2 (S.D.N.Y. July 3, 1990). "[A]ttachment under New York law solely for security purposes is appropriate only when it appears likely that a plaintiff will have difficulty enforcing a judgment." *Katz Agency, Inc. v. The Evening News Association*, 514 F.Supp. 423, 429 (S.D.N.Y. 1981).

Here, defendants have not furnished any evidence of assets they own in New York that would satisfy a judgment, should one be entered against them, and plaintiffs' anticipation of difficulty in enforcing a judgment against defendants appears to be reasonable.  The affidavit and documents of written evidence submitted by plaintiffs support the inference that plaintiffs transferred over $ 1 million to the Lehman firm to be placed in escrow accounts; that the Lehman firm gave written confirmation of the receipt of this money (*see* Compl. Ex. J); and that despite plaintiffs' numerous attempts to facilitate the return of the money without escalating the conflict into a litigation, the Lehman firm has refused to return the money and had at one point stated in writing its refusal to "cooperate or communicate … in any way going forward."  (Compl. Ex. J-U.)   Based on the inferences that can be drawn from these documents, and on defendants' failure to furnish any proof that the money in dispute has been returned to plaintiffs, the Court

16

finds that plaintiffs have satisfied the four requirements of CPLR 6212(a) and grants plaintiff's application for attachment. *See Bank of Leumi Trust Co.*, 892 F. Supp. at 482 (finding that a party applying for ex parte attachment has met the requirements of demonstrating that a claim for money judgment exists and that it is likely to succeed on the merits by providing affidavits and other written evidence that it loaned money to opposing party, the money has not been fully repaid, and opposing party failed to offer any proof of repayment).

## CONCLUSION

For the foregoing reasons, plaintiffs' Application for an Order of Attachment [77] is granted with respect to corporate defendant Lehman, Lee & Xu, Ltd.. Defendants' Motion to Dismiss [57] [66] is GRANTED in part and DENIED in part without prejudice to plaintiffs' right to serve any defendant consistent with the provisions of Fed. R. Civ. P. 4.

SO ORDERED.

Dated: New York, New York
       January 31, 2012

_____
        Richard J. Holwell
    United States District Judge

17